## Case No. 10,652.

PACKARD v. The LOUISA.

[2 Woodb. & M. 48;[1] 9 Law Rep. 441.]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

SEAMEN—WAGES—MARITIME CHARACTER OF EMPLOYMENT OF VESSEL—DELAY.

1. Where a vessel was under fifty tons burthen, and not engaged in the foreign trade, or in the coasting trade out of the state, but with a license was employed in carrying and laying stone during summer in Quincy river and Massachusetts Bay, it is doubtful whether her employment was of that maritime character which would render the vessel liable for wages.

[Cited in The Mary, Case No. 9,190; The Canton, Id. 2,388. Cited in brief in The May Queen, Id. 9,360.]

2. If a person is hired on board of her by the master, who has chartered the vessel of all the owners at a fixed proportion of the profits, and

this fact is known to the person, and if he signs no shipping articles, and resorts to the master only for payment two or three years after the service is finished, and is paid in part by him,—it is strong evidence that the contract was originally with the master alone, and not intended to bind the owners as such, or the vessel.

[Cited in brief in The Canton, Case No. 2,388.]

3. This presumption is strengthened if the person was thus hired and employed to load and unload, and lay the stone, as well as to navigate the vessel, instead of signing shipping articles, and being employed exclusively in marine duties. The usage of a port, in such a case, has some influence.

4. A delay to institute proceedings against the vessel for wages for three years after they became due from the master, under the above circumstances and contract, and when in the meantime some of the owners had changed and become insolvent, exonerates her from the lien for wages.

[Cited in Leland v. The Medora, Case No. 8,-237; The Bolivar, Id. 1,609; Pierce v. The Alberto, Id. 11,142. Cited in brief in The Canton, Id. 2,388. Cited in The Artisan, Id. 567; The Bristol, 11 Fed. 163.]

5. There is no fixed time for liens to expire, which exist at common law, except the time of parting with the possession, and none in maritime liens, where possession does not exist with them exclusively, except the end of the next voyage, or the intervention, after it, of rights by third persons without notice.

[Cited in Leland v. The Medora, Case No. 8,-237; Greely v. Smith, Id. 5,750; The Missouri, Id. 9,654; Hill v. The Golden Gate, Id. 6,491; The Dubuque, Id. 4,110; Griswald v. The Nevada, Id. 5,839.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This was an appeal from a decree of the district court, dismissing the following libel. It was filed by the libellant [John S. Packard] in November, 1845, against the sloop Louisa, of forty tons burthen, for wages due to him for services on board of her, commencing in March, 1842, and ending in November after. The libel alleged that Packard served as a seaman, hired by the master, Hersey, at twenty-three dollars per month, and that she was employed on the high seas, carrying stone, and he doing duty on board faithfully till duly discharged. The claimants were Seth Spear and John Briesler. Their answer denied that the libellant was a seaman in the Louisa, but averred that he contracted as a laborer, to load and lay stone with the master, Hersey; and denied that the vessel, employed as she was, ever became responsible for wages, she being hired by the master of the owners, in carrying and laying stone, within the state of Massachusetts, for one third of the profits; and that this was known to the libellant. It insisted also, that if the Louisa was ever liable, she had ceased to be so by Packard's resorting to the master, and receiving payment partially of him, and by the delay to institute proceedings against the vessel so long, and till the ownership had, in part, become changed.

Mr. Kingsbury, for libellant.

W. S. Morton, for vessel and claimants.

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

WOODBURY, Circuit Justice. The evidence and agreements of counsel in this case accord in substance with the facts set out in the libel and answer. Packard is proved to have actually served on board the vessel, both in loading stone, and in navigating her. She was of 40⁹/₅₉ tons burthen, and employed in transporting stone within the state of Massachusetts, and laying it, without shipping papers signed by the crew, or any regular clearances, except a coasting license. The libellant and Hersey came to a settlement in the winter of 1843, and part of what was due has since been paid by Hersey. It was shown that Spear owned three fourths of her, and Hersey one fourth, and that the former, in June, 1844, said that Hersey ought to pay Packard what was due, and he hoped that P. would not libel the vessel; and that about the first of March, 1845, Spear was again notified that the debt was unpaid. From sixty to seventy dollars still remained so. It was further shown, that in such vessels, under such contracts, the wages were considered a claim on the master, and not on the owners. It is a matter of regret that some of the details, as to the employment and papers of this vessel, are not more fully proved and alleged. It is, however, questionable, on all the facts as they stand, whether the Louisa, in such an employment within the river, at Quincy, and within Massachusetts Bay, without any regular clearances, ought to be deemed a vessel liable to any lien for the wages of men, not hired as seamen under any shipping articles, or exclusively for navigating her. Thackaray v. The Farmer [Case No. 13,852]. Here their business was to help to load, unload, and lay the stone, no less than to navigate her. Whether unloading a vessel belongs to a seaman, as such, depends on the usage of particular places, the heat of the climate, and the character of the hiring and voyage. Swift v. The Happy Return [Id. 13,697]; The Mary [Id. 9,191].

By the Laws of Oleron (Dunl. Adm. Prac. 98), it appears, that particular officers once existed for this purpose. It is certain, however, that laying stone is no part of the business of a seaman. This vessel, and the employment of Packard, seem to have been of a mixed or amphibious character, not distinctly and exclusively marine; and at the same time, not distinctly and exclusively independent of marine service and marine liabilities. The vessel was not destined to carry freight in the coasting trade from state to state, nor for people in general; nor merely to carry stone for particular objects, but to carry it for special purposes within the bay, and aid in laying it in wharves and other ways. And Packard was engaged to work in the latter employment as a laborer, as well as in navigating the vessel, and on a contract with Hersey, who had hired her of the owners, and not under ordinary shipping articles with the owners.

The questions then are, had he a lien for his wages in such a vessel, or for such an employment, either by an express contract, or act of congress, or any principles of admiralty law? The claim of a seaman on the vessel for his wages is, at any time, rather an equitable privilege than a technical hypothecation of the vessel. The Nestor [Case No. 10,126]; 2 Brown, Civ. Law, 142; Story, Bailm. § 288. It is a charge on her as a favor for priority of payment, if seasonably enforced. It is given in certain cases by admiralty law, and of course it cannot be sustained there, as that law is founded on the civil law, except where equitable. See cases cited, post. And in many respects in its character, looking for what is equitable, it must be regarded as analogous to other liens, given otherwise than by express statute or express contract. When such statutes or contracts provide for it, they of course furnish the limitations and conditions. But here no specific agreement is pretended to have been made for such a lien, as in case of pledges and mortgages. Nor are any state statutes cited on the subject, such as exist at times in favor of mechanics on houses. Nor can it be pretended that any lien is probably created, in a case like this, by the acts of congress. There are but two on this subject. One, passed July 20, 1790 [1 Stat. 131], relates to vessels when bound to a foreign port, or if of fifty tons burthen, and engaged in the coasting trade beyond the neighboring state, and then gives a lien on vessels, which probably means such vessels as just described. The other, passed June 19, 1813 [3 Stat. 2], gives it to all vessels engaged in the bank or cod fisheries. This vessel, the Louisa, was of less than fifty tons burthen, and not engaged in the coasting trade out of the state, nor employed in the foreign trade, or in the bank or cod fisheries, and of course the libellant can claim nothing from her in these views. As those acts, however, do not prohibit liens for wages created by any principles of admiralty law, on vessels of less than fifty tons burthen, they may, when coming within those principles, be sustained by this court on appeals, under the jurisdiction expressly conferred on the district courts, by the ninth section of the judiciary act of 1789 [1 Stat. 76]. [Penhallow v. Doane] 3 Dall. [3 U. S.] 54, 56; [Brown v. U. S.] 8 Cranch [12 U. S.] 137. But, on those general principles, where and how employed must the vessel be, to give a lien? And to whom on board? It must be an employment from one port to another; and not merely along shore, or in the shore fisheries. 1 Kent, Comm. 343; Abb. Shipp. 476, 477. It must also be at sea. Id.; Case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428; Stone v. Gadet [unreported]; Montgomery v. Henry, 1 Dall. [1 U. S.] 49. Not lying merely at a wharf. Phillips v. Scattergood [Case No. 11,106]. Not as ferry boats. Smith v. The Pekin [Id. 13,090]; Thackarey v. The Farmer [Id. 13,-

852], or merely carrying wood across a river. And it must be from one port to another, where the tide ebbs and flows, and not on fresh water. The Orleans v. The Phoebus, 11 Pet. [36 U. S.] 183, 184; Janney v. Columbian Ins. Co., 10 Wheat. [23 U. S.] 418, 428. The person libelling must also be engaged in maritime duties on board. [The Thomas Jefferson] 10 Wheat. [23 U. S.] 428; Case of The Phoebus, 11 Pet. [36 U. S.] 183.

The next inquiry is, what are such duties, and to whom is the lien given, if on board a suitable vessel, or one engaged in maritime employment? Not carpenters on board, though they may have a lien at times as mechanics, or if acting as seamen. The Lord Hobart, 2 Dod. 104; De Lovio v. Boit [Case No. 3,776]; North v. The Eagle [Case No. 10,309]; Prithard v. The Lady Horatia [Id. 11,438]; The Jerusalem [Id. 7,294]; [The Aurora] 1 Wheat. [14 U. S.] 96; [The General Smith] 4 Wheat. [17 U. S.] 438. Not a pilot from Gravesend to Deptford. Ross v. Walker, 2 Wils. 264; Trainer v. Superior [Case No. 14,136]. Though it does include pilots on the high seas. 6 C. Rob. Adm. 227. The Anne [Case No. 412]. And pilot, deck hands, engineers, and firemen may sue in rem against a steamboat. All these are engaged in what is really maritime. But not mere landsmen on board, as physicians. Gardner v. The New Jersey [Id. 5,233]; 2 Dod. 104; Mills v. Long, Sayer, 136; Trainer v. Superior [supra.]

It is doubtful, therefore, whether Packard's employment on board of the Louisa, partly in loading and laying stone, or the business of the sloop herself, could be regarded as strictly maritime and commercial. It seemed to be not wholly that of the sailor, whose services in and for the ship, and whose reckless character in ocean dangers, have made the law indulge him with this additional security. If this kind of claim be not contemplated by the parties from the character of the vessel, or nature of the duties required of the men, it would be unjust to let it be set up against the vessel. Such is the case with seamen on board ships of war, or revenue cutters,—and for the reasons that the employment of such vessels and such seamen is not entirely commercial, as well as that the ownership of the vessels, being in the government, bars the practicability of any resort to them for wages having been contemplated, as well as prevents their liability. Ellison v. The Bellona [Case No. 4,407]; Moitez v. The South Carolina [Id. 9,697]; Abb. Shipp. 476; Hopk. 104. But the lien is not lost if the vessel merely carries the public mail. 2 Dod. 100. Nor in letters of marque which pay wages, and are engaged in commerce; but otherwise with mere privateers, paid by shares. Ellison v. Bellona [supra]. So there may be other circumstances connected with a transaction, which repel or rebut the idea that the parties looked to a lien. And when these occur, the lien either does not attach, or the evidence

of such circumstances shows it to be relinquished. Crawshay v. Homfray, 4 Barn. & Ald. 50.

Thus, in the present case, beside the equivocal or ambiguous position of the libellant, and of the vessel in which he labored, there had been a hiring of the Louisa, by the captain, of the other owners, and a contract by the captain with Packard, not as captain of her for the owners, but for himself; it being his duty as the charterer of her, to supply the men. All this was known to Packard; and he signed no shipping articles, and perhaps he ought to be considered as having no expectation of a lien, originally, on the vessel. In some cases this inference might not arise from that alone. Jameson v. The Regulus [Case No. 7,198], note; The Crusader [Id. 3,456]. But here, coupled with the other facts, it looks like an agreement, made to serve for the captain rather than the owners, when the latter had hired the vessel at a fixed freight, and also hired the men, with a knowledge of his contract. The captain could not resort to the vessel for any services or wages of himself, by the admiralty law. The Orleans v. The Phœbus, 11 Pet. [36 U. S.] 184; Gardner v. The New Jersey [supra]; Phillips v. The Thomas Scattergood [Case No. 11,106]; 2 C. Rob. Adm. 196; Abb. Shipp. 476; Montgomery v. Henry, 1 Dall. [1 U. S.] 49. Sed quære, De Lovio v. Boit [Case No. 3,776]. Such are the decisions, rather forced on the admiralty by courts of law. Because, on principle and analogy, the master should have the same lien on the vessel as the seamen. 2 Brown, Civ. Law, 95, 96. But notwithstanding his claim on principle in cases generally, he could not have it here, as being not employed by the owners, or working for the ship, but for himself; and it seems just that a seaman so employed by him, and with a full knowledge of all these facts, should stand in a like position. A different course would be tantamount to giving Packard a claim on the owners, as owners, when they had not employed him; nor had their agent done it for them. There must have been no knowledge of the facts, or the repairs be very durable, or the charter must have contemplated it, if the owners are liable for repairs, when the master has hired the vessel, and orders them. Moll. 355; 2 Brown, Civ. Law, 135. The usage in such case to look to the captain alone, would be nothing more than what seems legal and reasonable. In new cases an existing usage should not be without some influence. The George [Case No. 5,329]; The Recside [Id. 11,657]. Indeed, usage governs often at particular places, as to the duties of seamen. Relf v. The Maria [Id. 11,692], note; The Mary [Id. 9,191].

But however any of these views may be, in their force and weight, I think the dismissal of this libel by the district court is on another ground so well supported, both by principle and authority, that the decree ought not to be reversed. It is the long delay to

resort to the vessel, and when, in the meantime, the owners had changed, and one of them become insolvent.

The claim of a seaman for wages on the vessel, is a species of lien upon an article, which he should not long forbear to enforce, or it may become inequitable. Having assisted to keep in repair, and navigate and use her for purposes profitable to the owners, and having been so attached to it by a contract or shipping-papers, and having been exposed to all the risks, and toils, and responsibilities of a seaman in her, he is allowed a privilege to charge and hold on upon her for his payment. But all analogies show that the claim, if renewed after long abandoned, will mislead the public as well as the owners, and embarrass commerce and sales, through secret and unknown and unrecorded outstanding claims. Maritime liens are not, like common law liens, limited to possession. The Nestor [Case No. 10,126]. Indeed, exclusive possession seldom accompanies them at all. But they are claims in rem, or charges in rem, having priority, and are to be seasonably enforced, else they may work great fraud in the community, where possession is not taken or retained and no public register or record is made of them, and the property thus secretly encumbered is allowed to depart, it may be, again and again, to the opposite side of the globe. The Nestor [supra]; Ex parte Foster [Case No. 4,960]. Hence, where congress has given an express lien in the two acts before referred to, they evidently contemplate, as a part of sound public policy, a speedy and prompt enforcement of it. The first act provides that seamen, "as soon as the voyage is ended" and the cargo and ballast fully discharged, "shall be entitled to all the wages due; and if not paid in ten days, or if a dispute arises, the master shall be summoned to show cause why process shall not issue against the vessel," according to the course of admiralty, to answer for the said wages; "and if the master neglects to appear or settle for the wages, process is to issue forthwith, and the master must produce the contract or day-book," and if the vessel is about to proceed to sea before the ten days have expired, or has left the port of delivery before paying the wages, "immediate process out of any court having admiralty jurisdiction" may be had. This looks to early proceedings only, and contemplates only ten days' delay, and indeed no departure of the vessel, even on a new voyage, till the libel should be filed. And if she does in the mean time depart, or prepares to depart, a process still earlier than ten days can be instituted against her.

In the case of fishing vessels, the claim given to the seamen on the vessel is, by the act of June 19, 1813, § 2, limited to six months after the sale of the fish or fare; but is given for that period as fully as in the merchant service. Indeed the sailor, after reaching land, is so impatient for his wages, and so needy, that he will seldom consent to wait long, unless his contract or service has been of a land character rather than maritime, and his habits partake more of the former business. The law, in order to protect him under his improvident habits, when a mere seaman, gives him three modes of redress and security, so as speedily and surely to obtain his just dues. But, doing this, and following the claim on the vessel, even to the last plank or nail, if wrecked or condemned. 1 Dod. 40; Lewis v. The Elizabeth & Jane [Case No. 8,321]. Yet a corresponding diligence must be exercised, in order to secure freedom and safety to commercial transfers of property against secret liens. A prominent reason for giving him a libel in the admiralty, against the ship, is, that he may at once detain her for security; and another is, that the admiralty court being always open, he may obtain satisfaction sooner than by a suit at common law. 2 Brown, Civ. Law, 77, 85. Most other liens, raised by implication, if at common law, are dissolved by a separation from the goods, which is permanent and of much length. 1 Durn. & E. [1 Term R.] 4; 3 Durn. & E. [3 Term R.] 119; 6 East, 27. The innkeeper has it only till his guest receives his baggage, and quits. The common carrier does not retain his lien after the articles are delivered over. Even in maritime cases, a lien on goods for freight is lost, if the goods are delivered, or time is allowed to the charterer of the vessel to make payment of the freight. 2 Ld. Raym. 974; 6 Mod. 12; 11 Mod. 6; 4 Adol. & E. 260; 2 Brown, Civ. Law, 82. In many cases, liens on domestic ships by those repairing or furnishing materials for repairs are also lost, if the ships are allowed to go to sea without the liens being enforced on them. Johnson v. The M'Donough [Case No. 7,395]; Mont. Liens, 19; 2 Moore, 34; Abb. Shipp. 77, etc.; [Spring v. South Carolina Ins. Co.] 8 Wheat. [21 U. S.] 268; 2 Dow. 29; 11 Mass. 34; 15 Johns. 298; 16 Johns. 89. But there may be cases of supplies furnished, or money advanced to the master in a foreign place, which are not secured by an express contract of bottomry or mortgage, and time expressly given, but being to be repaid usually out of the fruits of the voyage, may rest on a different ground, and create liens for the whole voyage, or longer. It is not here pertinent to examine them; and I merely allude to them with a view to exclude them. See Leland v. The Medora [Case No. 8,237]. Again, a lien on goods for salvage is lost, if the goods are given up to the possession of the owner. Brevoor v. The Fair American [Id. 1,847]. The policy of the law to shorten such liens, is manifested also in those which are expressly allowed by statute. Thus, where a lien has been created by express statute, in favor of mechanics on houses they have helped to build for others, it usually is made to last for only six months, and sometimes

but thirty or sixty days. They too are at times required to be recorded. See the Revised Statutes of Massachusetts.

All these limitations are wise, whether created by statute or usage, so as to prevent secret claims from existing on property, independent of its possession, and independent of what is recorded by mortgages or otherwise; and so as to obviate litigation, and remove speedily any obstacle to the free disposal and circulation of property. 14 Serg. & R. 333. To allow a seaman, then, after his voyage is over and his contract ended, and his connection with the vessel dissolved, and he embarked for years in employment elsewhere, to retain a secret claim on the vessel, and thus prevent her sale or use, unincumbered, and thus embarrass any new purchaser without notice, would be very bad policy. Abb. Shipp. 187, note; Id. 539, note; The Rebecca [Case No. 11,619]; 3 Kent, Comm. 198. Much more would the long continuance of the lien, under these circumstances, not be reasonable, if the lien itself, for any time whatever, was doubtful from the nature of his undertaking; as here, being as much that of a laborer to lay the stone, which the vessel carried, as to navigate her, and not having signed any shipping articles as a seaman, nor being engaged on the high seas, or even in the coasting trade to other states. The seaman, like the common carrier or innkeeper, or mechanic, would still be able to sue on his contract, till barred by some other equitable defence, or by some statute of limitations. By the statute of Anne, he is not barred, in an action at law for wages, till six years be expired. See Jay v. Allen [Case No. 7,237], at this term. Again, in equity, a party, though otherwise chargeable, is sometimes relieved if there has been such delay in the complainant as to prevent the respondent from having a remedy over so good as if prosecuted earlier. See Mason v. Crosby [Id. 9,234]. If the delay leads to new interests and relations, it operates against the plaintiff guilty of it, and sometimes lessens the amount to be refunded, and at others prevents the rescinding of a contract.

Courts of admiralty, on the matters within their jurisdiction, must be governed by equitable principles. 8 Pet. [33 U. S.] 538; Harden v. Gordon [Case No. 6,047]; Andrews v. Essex Fire & Marine Ins. Co. [Id. 374]; 1 Hagg. Adm. 176, 357. They are chancery courts for the sea. See Jay v. Allen [supra], this term. Here a new owner of one quarter had come in instead of Hersey, and any remedy over against the latter had become worthless by his insolvency. This part of the case, it will be seen, does not go on the ground that the claim of the plaintiff is barred on his contract with the master in two or three years, or in any period short of the statute of limitations, as before suggested, if one exists. Ang. Lim. c. 4, § 3; The Sarah Ann [Case No. 12,342];

Pitman v. Hooper [Id. 11,186]. But it rather proceeds on the ground, that if the seaman sets up an equitable lien on the vessel as collateral security to that contract, and one raised by construction of law, and not regulated by express contract or positive statute, he must enforce it within an equitable period, considering the nature of the lien and of the employment of the vessel, and the changes of interest happening in it. If he asks equity, in this respect, it must be by doing equity, and not violating it. Where the vessel was so situated that the interests in her could not be changed, as, if condemned abroad, as in Pitman v. Hooper [supra], or where the length of time is accounted for by absence of the seaman or want of recovery for the vessel when condemned or lost after freight is earned (Sheppard v. Taylor, 5 Pet. [30 U. S.] 675), the only bar, perhaps, in most cases, is the statute of limitations, or what is equivalent to it. All depends, if the title in the vessel has not been sold, on the circumstances and the equities of the case. 3 Kent, Comm. 196; Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328; 3 Hagg. Adm. 238; The Sarah Ann [supra]; Trump v. The Thomas [Case No. 14,206]; The Rebecca [supra]; The Eastern Star [Case No. 4,254]; The Mary [Id. 9,186]; Curtis on American Seamen, 321; The Chusan [Case No. 2,717]. These may require, as a general rule, that the lien for wages is to end, if not enforced soon after the voyage ends. Semb. [Blaine v. The Charles Carter] 4 Cranch [8 U. S.] 328. See former analogies. And yet cases may occur where equity would enlarge the time, on some facts, to one year, and on others to several years. When the vessel continues in existence and employed, or is sold without notice, no case has been found where the lien extended beyond the end of the next voyage. There is a positive statute thus in 2 Laws Pa. 475 (March 27, 1784). The Rebecca [Case No. 11,619]. The time of delay there was only nine months. If an owner himself neglects to resume a claim on his ship, once derelict or abandoned, a year and a day, he is estopped from recovering his own property. Lewis v. The Elizabeth Jane [Id. 8,321]; 1 C. Rob. Adm. 34; 2 Brown, Civ. Law, 49. Justice Livingston says, there is no rule requiring seamen to prosecute at once,—though in France, after a sale of a vessel and one voyage, they will not allow a proceeding in rem. The Mary [supra]. In that case, the seamen were discharged at New Orleans, and prosecuted at New York, their home, as soon as the ship returned there from Liverpool, which was her originally intended voyage. Though she remained some time at New Orleans, over six months, yet she was sued speedily on her return.

The present case is, therefore, decided on its own peculiarities, as before explained. Again, if the responsibility of the vessel for

the fulfilment of the contract of the master, if existing at all, was considered like that of a surety for the master, being collateral, though it is not so strong as that, how incumbent would it be to resort to the surety early, and not sleep over claims, till the original debtor becomes insolvent, and the interests of the owners have changed? The United States laws, as to sureties of deputy postmasters, on account of the danger of injury to them by long delays expressly exonerate them, if the principal be not used in two years after the debt is liquidated. So, in courts of equity, sureties are often exonerated by negligence as to the principals, or giving them new and extraordinary forbearance, if the liability over has been injured or lost by the principal becoming insolvent, after the usual credit or agreed delay expired, or after the claim ought to have been enforced according to the ordinary course of business and its usages. 7 Johns. 332, semb.; 13 Johns. 383; King v. Baldwin, 17 Johns. 384.

There is another ground of defence under positive precedents, which might be urged so far as regards the new owner in the ship and his interests in common cases. He is a purchaser for valuable consideration without notice, for aught which appears, of this secret outstanding trust, and usually would hold property, thus purchased, exonerated from such a trust. 2 Story, Eq. Jur. 1217, 1228; 9 Ves. 100. This would be correct in relation to trusts on land, growing out of parol agreements. So in mortgages of personal property not recorded, where they are required to be recorded. In the case in The Rebecca [supra], the purchase was with notice. But in case of liens like this, it deserves more consideration before I could allow it to prevail, even as to that purchaser, if the want of notice stood as the only answer to this claim, so much like a bottomry claim, and of which a record or notice is not necessary. See Leland v. The Medora [Case No. 9,237].

On the whole facts, the nearest precedent which I have found is this. In the case of a lien on a vessel by a bottomry bond, created July 14, 1796, and to take effect on the arrival of the vessel in Europe; she went thither, and returned here Sept. 28th, 1796; but she was not then arrested or libelled to pay it, and it was delayed till the 19th January, 1798, between which periods she had made two voyages, and been attached by creditors. It was held that the lien had thus become discharged. Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328. But this was less delay than has occurred here; and Justice Story says, in Notes to Abb. Shipp. 539, that the rule would be similar in a lien for wages as in a bottomry lien. The decree below is affirmed.