## Palmer v. Foley et ux., Appellants.

170

Argued September 30, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Carroll Caruthers,* for appellants.—The court had no jurisdiction to appoint a guardian: Hoffman's Est., 209 Pa. 357; Buck's Est., 256 Pa. 359; Bryden's Est., 211 Pa. 633; Brinton's Case, 86 Pa. Superior Ct. 194; Brooke's Est., 24 Pa. Superior Ct. 430.

There is no allegation in either the bill or the amended bill of complaint, that plaintiff was weak-minded and liable to become the victim of designing persons, and no prayer for the appointment of a guardian.

It has been decided many times, that the only decree, which can be entered must be based on the allegations appearing in the bill: Luther v. Luther, 216 Pa. 1, 9; Spangler Brewing Co. v. McHenry, 242 Pa. 522, 527; Saup v. Streit, 258 Pa. 211, 215; Gunther v. Kuntz, 270 Pa. 144, 145; Rolshouse v. Wally, 272 Pa. 506, 507; Bell v. Johnson, 281 Pa. 57, 61; Loughran v. Kummer, 297 Pa. 179, 182; Lawrence v. King, 299 Pa. 568, 576; Magen v. Neiman, 301 Pa. 154, 159; Rys. v. Rys., 99 Pa. Superior Ct. 339, 344.

A court should not lend its aid to plaintiff who alleges a conveyance was made to defraud creditors: Winton v. Freeman, 102 Pa. 363; Harbaugh v. Butner, 148 Pa. 273.

The mere existence of kinship does not itself give rise to a confidential relation, such as would impose the burden of proof on the one receiving the gift to assert its validity: Clark v. Clark, 174 Pa. 309; Leedom v. Palmer, 274 Pa. 22; Thorndell v. Munn, 298 Pa. 1; Lawrence v. King, 299 Pa. 568; Bauman v. Reithel, 302 Pa. 239.

*Fred Trescher,* of *Kunkle, Walthour & Trescher,* with him *Adam B. Shaffer,* for appellee.—The court had jurisdiction to appoint a guardian: McGarvey's Est., 64 Pitts. L. J. 42; Hurst v. Brennen, 239 Pa. 216; D., L. & W. R. R. v. Co., 241 Pa. 83.

A close confidential relation existed: Allore v. Jewel, 94 U. S. 511; Brady's App., 66 Pa. 277; Williams's Est., 299 Pa. 440; Null's Est., 302 Pa. 64.

Fraud, undue influence or confidential relation was proved: Crothers v. Crothers, 149 Pa. 201; Worrall's App., 110 Pa. 349; Null's Est., 302 Pa. 64.

OPINION BY MR. JUSTICE WALLING, November 23, 1931:

John Palmer died June 29, 1928, and under his will the plaintiff, Mary Jane Palmer, his widow, became the owner of a house and lot in Derry Township, Westmoreland County, of the value of $3,000. After Mr. Palmer's death plaintiff, who was about seventy-five years of age, made her home with one and then another of her married children and about January 1, 1929, went to reside with the defendants, Olive Foley and her husband, James Foley, the former being her daughter. Mrs. Irwin, a married daughter of the defendants, also lived with them, and on February 20, 1929, she drove her mother and grandmother, the plaintiff, to an attorney's office in Greensburg, where Mrs. Palmer executed a deed for the property above mentioned to her daughter, Mrs. Foley, without any adequate consideration, that named in the deed being one dollar and love and affection. Three days later Mrs. Palmer and Mrs. Foley visited a bank at Blairsville, where the former gave the latter her entire bank balance of $921.51. On June 5th of the same year Mr. Foley, as executor of the John Palmer estate, made a check of $80.52 to the plaintiff which was immediately transferred to Mrs. Foley, out of which she handed Mrs. Palmer $10. Shortly prior to the execution of the deed at Greensburg, Mrs. Foley took her mother to a magistrate in Blair County where the latter acknowledged a deed to the former for the same property. The theory is advanced that the first deed was thought defective because acknowledged in another county. In any event, it was not used. About one month after the deed was executed at Greensburg the Foleys entered into a contract, later rescinded, to convey the house and lot to third parties.

To set aside these several transfers, which denuded plaintiff of her entire property, this bill was filed, averring inter alia, her mental weakness, fraud, confidential relation, undue influence, etc. An answer was filed and testimony taken. The chancellor found the control-

ling facts and legal conclusions in favor of plaintiff and entered a nisi decree, which the court in banc, after dismissal of exceptions, made final, ordering, inter alia, a reconveyance and retransfer of the property in question. Thereupon the defendants brought this appeal.

The evidence supports the findings and the decree must be affirmed. There is a legal presumption of a confidential relation in certain cases, like attorney and client, guardian and ward, etc. In the case of parent and child, however, the legal presumption does not exist, but its existence is a question of fact for the trial court to be determined from the testimony: Null's Est., 302 Pa. 64, 68, citing Harrison v. Welsh, 295 Pa. 501, 506; Leedom v. Palmer, 274 Pa. 22, 25. On appeal, the question is whether the conclusion is supported by sufficient evidence; here, that question must be answered in the affirmative. The existence of this relation raises a presumption of undue influence. The fact that plaintiff was aged, of feeble mind, could neither read nor write, had no independent advice (Mr. Foley's attorney having drawn the deed), that, from the time plaintiff went to reside with Mrs. Foley, the latter exercised entire control of the former's affairs even to the witnessing of her cross mark on checks, and that the transactions in question were shockingly improvident, as they left the old lady penniless and helpless, all lend support to the conclusions of the trial court. The chancellor's finding, "That Mary Jane Palmer for a long time was enfeebled and weakened and her mental condition was such that she was not capable of transacting her own business and was liable to become the victim of designing persons and was in such a state, both physically and mentally, that she was easily led and influenced by persons close to her and did not have sufficient mental capacity to resist persuasion of other people;......that she was and is wholly dependent upon the money and property and the income therefrom which, it is complained in this bill of complaint, was wrongfully taken from her," is amply

supported by the evidence. We also agree with the chancellor's conclusion that: "The facts and circumstances in this case cast more than a slight suspicion upon these transactions. Their relationship, their residence with the plaintiff, inadequacy of consideration, age, physical and mental condition and inability to read and write of the plaintiff, the giving away of all of her property leaving her destitute, and the defendants' superior mentality, required the defendants to prove that there was no taint of fraud or undue influence in these transactions, which they wholly failed to do." The law applicable to this situation is, as stated by Chief Justice MOSCHZISKER, speaking for the court, in Williams's Est., 299 Pa. 440, 446: "The rule is that, where one advanced in years, and thus enfeebled, conveys all her means of subsistence to another, who occupies a confidential relation toward her, and a claim of ownership is subsequently made by the grantee, the burden is upon the latter to show that the transaction in question was 'fair, conscionable and proper, beyond a taint of suspicion of fraud, undue influence or overreaching' on the part of the grantee." To like import is the opinion of Mr. Justice SIMPSON, speaking for the court, in Thorndell, Admrx., et al. v. Munn, 298 Pa. 1, 9, which says, "It is clear that the relation between decedent and defendant was a confidential one, and since, by the gift, he received a large portion of her estate, the burden was cast upon him to 'prove [affirmatively] that the gift was made intelligently and with a full knowledge......of the true character of the transaction' (Clark v. Clark, 174 Pa. 309, 326) : 'that no deception was used, and that all was fair, open, voluntary and well understood' (McConville v. Ingham, 268 Pa. 507, 518) ; that the transaction was fair, conscionable and beyond the reach of suspicion; that he had not availed himself either of the necessities of decedent or her good nature, liberality or credulity; and that the proof was full and clear that the transaction was the free and intelligent act of decedent performed with a

thorough understanding of the transaction and of its consequences: Darlington's Est., 147 Pa. 624; Miskey's App., 107 Pa. 611; Matthaei v. Pownall, 235 Pa. 460; Corrigan v. Conway, 269 Pa. 373." Harrison v. Welsh, supra, holds that: "A [confidential] relation exists when the circumstances make it certain the parties do not deal on equal terms, but, on the one side is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed."

The burden was, therefore, upon the defendants in the instant case to rebut the presumption of undue influence and show that the transaction was fair and in good faith. This, as the chancellor finds, they wholly failed to do. To establish a consideration they set up, but failed to prove, an oral agreement by which plaintiff was to make her home with them. In fact, Mrs. Foley's own testimony negatives such an agreement for she says she knew nothing about the proposed conveyance until on the way to Greensburg the day it was made and that the talk about the old lady living with her was some days later. The chancellor was fully justified in refusing to find the existence of the alleged agreement.

While the rule that a grantor cannot recover property conveyed in fraud of creditors is sound as a general proposition, it cannot be successfully invoked by the defendants here. It does not apply where, as here, the grantor, feeble-minded and liable to become the victim of designing persons, is induced by the undue influence of the grantee to make the conveyance and where the latter creates in the former a groundless fear of losing the property. In such case, the grantor will be treated as the victim and not in pari delicto with the grantee. Mrs. Foley cannot be permitted to profit by her own fraud. "Under some circumstances aid will be extended to grantors who are in delicto, but not in pari delicto, with the grantees. Where there are different degrees of guilt as between the parties to the fraudulent or illegal transaction, as when one party acts under cir-

cumstances of oppression, imposition, undue influence, or at great disadvantage with the other party concerned, so that it appears that his guilt is subordinate, the court will grant relief, as an exception to the general rule": 12 R. C. L., page 13. See also note to Carson v. Bellies, 1 L. R. A. (N. S.) 1007, page 1012. Furthermore, the chancellor found that plaintiff was incapable of transacting business.

When this bill was filed, a proceeding was instituted on the law side of the court to have a guardian appointed for Mrs. Palmer, because of her incapacity. This was never formally concluded, but the lower court, in disposing of the case at bar, decreed that defendants transfer the property in question to a designated trustee for plaintiff's use, and further decreed that she was so weak mentally as to be liable to become the victim of designing persons and fritter away her estate and therefore appointed the said trustee as her guardian. It is immaterial to the defendants whether the property be returned to Mrs. Palmer or to a trustee for her use. Hence, they have no standing to raise that question. A decree, although irregular, will not be reversed except at the instance of a party injured thereby. Treating the appointment of guardian as made in the pending proceeding on the law side of the court, the appeal therefrom should be to the Superior Court. See section 8 of the Act of May 28, 1907, P. L. 292, 294, as amended by the Act of April 15, 1915, P. L. 124.

The decree is affirmed and the appeal is dismissed at the cost of appellants.