Zarnowski, Appellant, *v.* Fidula.

Argued January 4, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Guy A. Sofanelli,* with him *Gerald G. Dolphin,* for appellant.

*Eugene Nogi,* with him *Leo G. Knoll,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, April 1, 1954:

A family dispute in the courts is always a mournful spectacle, and the eventual decision often cannot do full justice, because fullness of probity is lacking on

either side. The litigation in this case has to do with a controversy between the son and the two daughters of Joseph and Cordelia Zarnowski, now deceased.

On November 17, 1950, the aged Zarnowskis (Joseph, 82; and Cordelia, 79) deeded to their daughters a certain piece of real estate with two houses. Upon the death of the grantors, the son Leo Zarnowski brought an action in equity to set aside the deed on the ground that his parents were weak of mind and body and that they were victims of fraud and undue influence practised upon them by his sisters. The learned Chancellor, before whom the cause was tried, found in favor of the defendants and an appeal to this Court followed.

It appears that the defendants, not unlike the two covetous daughters of King Lear, showed something less than true filial devotion to their parents. In 1948 the defendant Rose Harvilchuk caused the parents to be moved from the comfortable house in which they had been living into the basement of an adjoining house which contained no heating nor bathing facilities, although from time to time when the weather was particularly rigorous the parents were allowed to sleep in a bedroom in the daughter's apartment. It would seem, also, that the son was not free from filial blame since the testimony speaks of occasions when he gave his mother cause for tears. This neglect on the part of the children, however, censurable as it may be morally, cannot affect the legality of the real estate transactions which met all requirements of the law.

Although both grantors were old, weak and weary, there is no evidence that they were lacking in mental stability, or that the execution of their deed was not the product of their own free will. The record shows that they consulted Leo G. Knoll, a member of the Bar of Lackawanna County and present chairman of the Pennsylvania Workmen's Compensation Board. At

this consultation, Attorney Knoll discussed with them, both in the English and the Polish language, the various ways by which they could dispose of their property. The parents explained that they had previously made a will which they had destroyed and it was their desire now to convey their property by deed. Mr. Knoll counselled them that it would be to their own best interests to retain a life interest in the property, and a deed with this provision included was prepared. Neither of the defendants was present during this discussion between the parents and the attorney.

Two days later, on January 17, 1950, Mr. Knoll read to the parents, in their own home, the contents of the deed (in English and Polish). They were asked if the instrument conformed to their desires and they replied in the affirmative. Nor were the defendants present at this meeting. At the hearing before the Chancellor, both Mr. Knoll and his secretary (also present at the time of the signing) testified that the grantors evidenced a clear understanding of the nature of their acts.

If Joseph and Cordelia Zarnowski voluntarily signed the deed, no matter what line of thought urged them to the signatures, the deed must stand as written and executed.

The plaintiff has sought to invoke the rule expressed in *Palmer v. Foley*, 305 Pa. 169, that " 'where one advanced in years, and thus enfeebled, conveys all her means of subsistence to another, who occupies a confidential relation toward her . . . the burden is upon the latter to show that the transaction in question was "fair." ' " But the burden of proving a confidential relationship rested first upon the plaintiff. (*Gracey v. Rutherford*, 366 Pa. 196.) A parent-child kinship is not enough in itself to create a confidential relationship. It is only where the parties do not deal on equal terms and one side exercises an overmastering influence

on the other that the law will designate the association to be that of a confidential relationship. (In re *King Will,* 369 Pa. 523.)

It may be added that Dr. E. L. Kiesel, a medical practitioner for 51 years, testified that from his examinations and conversations with the grantors he was satisfied that they possessed sufficient mental capacity to understand the conferences with Attorney Knoll, and to comprehend the nature of the contents of the deed which they signed. He further stated that neither of the parents manifested any symptoms of weakmindedness.

We conclude that the findings of fact by the Chancellor and his conclusions of law, both approved by the court en banc, are amply sustained by the record.

We can discover no merit in the appellant's complaint that the lower court did not make specific answers to his requests for findings of fact since it is not alleged that the Court failed to make a substantial disposition of the requests. What we said in *Morris v. Featro,* 340 Pa. 354, applies equally well here: "An examination of the exceptions discloses that there is no complaint in any of them that the chancellor's adjudication . . . failed to make substantial disposition of requests for findings and conclusions; consequently specific answers to these exceptions were not required."

The order of the court below is affirmed, the costs to be divided equally between the appellant and appellees.