## Sendick *v.* Matvey, Appellant.

Argued October 1, 1957. Before JONES, C. J., BELL, CHIDSEY, ARNOLD, JONES and COHEN, JJ.

288

*Joseph I. Lewis* and *Louis D. Cooper,* with them *Cooper, Hunter & Lewis,* for appellant.

*Patrick J. Corr,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 22, 1957:

Appellant, the youngest daughter of Susie Sendick, deceased, appeals from a decree in equity entered by a divided court en banc, affirming a chancellor's findings and ordering appellant to reconvey certain real estate located in Pittsburgh to the decedent's estate. Decedent instituted this equity action on November 16, 1953; upon her death, on April 4, 1954, her son and executor, Louis Sendick, Jr., was substituted as plaintiff.

The complaint in equity alleges, in substance, that the appellant fraudulently induced the decedent to execute a deed to the property in question to the appellant when the decedent's intention was only to make a will. The eighth paragraph of the complaint states: "At the time the alleged Deed was signed, the Plaintiff was in her sixty-ninth (69) year, weak in body and confined to her bed, and weak in mind, easily influenced by the Plaintiff [sic] who stood in a confidential relationship to her, and not possessed of such mental capacity to comprehend the true meaning of said instrument or to understand the effect of her act, and was told the instrument was only a Will which she could revoke any time. The plaintiff by reason of her illiteracy could not read the instrument that was signed by her; and since the same was not read to her in her native tongue, she trusted representations made to her

that it was a Will and signed the same." It was further alleged that the appellant promised to move into the decedent's home, pay the taxes, maintain the property and care for the decedent and that the appellant had failed to do any of these things. In substance, the prayer of the complaint was that the appellant be compelled to reconvey the property allegedly obtained by her fraudulent acts and undue influence.

Trial was held before the chancellor on October 4 and 5, 1954. The appellee offered eight witnesses, five of whom were ruled incompetent to testify under the Act of May 23, 1887, P. L. 158, §5(e), 28 PS §322. No exceptions having been taken to this ruling, the question of their competency is not before this Court. The three witnesses who were permitted to testify for the appellee were Mrs. Rose Parks, decedent's eldest daughter, Mrs. Parks' husband and the doctor who cared for the decedent during the period in question. The chancellor properly ruled that because Mrs. Parks did not stand to benefit under decedent's will she was a disinterested witness and consequently competent to testify under the Act of 1887, supra. Appellant called only two witnesses, Michael W. Huron, a member of the Allegheny County Bar and Mrs. Esther Huron, his wife and secretary, who was a notary public.

On July 11, 1955 the chancellor filed his adjudication, findings of fact, discussion, conclusions of law and decree nisi.

The chancellor made the following findings of fact, inter alia: that the decedent had, on August 15, 1951, executed a deed to the property in question, reserving a life estate while conveying the remainder interest to the appellant; that the appellant, on August 29, 1951, had executed a written agreement which recited that in consideration for the conveyance to her of the remainder interest in decedent's property, the appellant

agreed to pay decedent's funeral expenses not to exceed $800 and a lien against the property held by the Commonwealth of Pennsylvania Department of Public Assistance; that there was also an oral agreement under which the appellant undertook to care for the decedent during her lifetime in further consideration for the conveyance; that the decedent was enfeebled in both mind and body by her illness; that the appellant did not move into decedent's home until January, 1952, five months after the conveyance was made; that the appellant never resided with the decedent until after the deed was executed, and before that time she only called upon the decedent occasionally when accompanied by her family; that the appellant failed to pay the funeral expenses or the Department of Public Assistance lien as she promised and that she had breached her agreement of August 29, 1951.

In his discussion the chancellor stated: "The facts and circumstances in this case cast more than a slight suspicion upon the [appellant], the relationship of the parties, the difference in their ages, physical and mental condition, and the [appellant] was required to prove there was no taint of fraud or undue influence in this transaction, and in this respect [appellant] failed." The chancellor's decree nisi directed the appellant to reconvey the property to the appellee and to make an accounting to the court-appointed receiver.

The court en banc (one judge dissenting), on January 24, 1957, affirmed the chancellor, dismissing the appellant's 49 exceptions to the adjudication, findings of fact, conclusions of law and decree nisi, and entering a final decree.

Our scope of review in an appeal of this type was recently discussed by this Court in *Commonwealth Trust Company, Admr. v. Szabo*, 391 Pa. 272, 138 A. 2d 85, wherein we said: "In passing upon the

questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal: Gagnon v. Speback, 389 Pa. 17, 20, 131 A. 2d 619; Mann v. Mann, 387 Pa. 230, 233, 127 A. 2d 666; Eways v. Reading Parking Authority, 385 Pa. 592, 601, 124 A. 2d 92; Brightbill v. Boeshore, 385 Pa. 69, 79, 122 A. 2d 38. However, the chancellor's 'conclusions, whether of law or ultimate fact are no more than his reasoning from the underlying facts and are reviewable', especially 'where the underlying facts themselves are not in esse but are matter of inference and deduction': Kelly v. Philadelphia, 382 Pa. 459, 465, 115 A. 2d 238; Eways v. Reading Parking Authority, supra, p. 601; Peters v. Machikas, 378 Pa. 52, 56, 105 A. 2d 708. Furthermore, a chancellor's findings of fact, even though approved by a court en banc, need not be accepted as conclusive if there is no evidence to support them or if they are based on an inference erroneously taken (Essick et al. v. Shillam et al., 347 Pa. 373, 32 A. 2d 416; Potter et al. v. Brown et al., 328 Pa. 554, 563, 195 A. 901), or where the evidence, in order to prevail, must be clear, precise and indubitable or must meet some other prescribed standard (Stafford v. Reed, 363 Pa. 405, 407, 70 A. 2d 305)."

From the uncontradicted and undisputed evidence appearing on this record, a clear narrative of the events surrounding this transaction emerges. Governed as we are by the principles reiterated above, we must determine whether the chancellor's findings and conclusions are based upon adequate evidence and whether his inferences therefrom were properly drawn.

At the time of the conveyance, and for some time prior thereto, the decedent was bedridden, suffering

from high blood pressure, arteriosclerosis and a heart condition; she showed signs of senile changes or degeneration of the brain, having, at times, lapses of memory. However, the evidence is clear that she discussed her business affairs lucidly and, as Mrs. Parks, appellee's own witness, stated upon direct examination, intelligently. At the time of the conveyance, appellant did not reside with the decedent but did visit with her regularly on the week-ends. The decedent's two sons, together with their wives, lived with the decedent.

During the several months prior to the conveyance the decedent held several conversations with the appellant, Mrs. Parks and another daughter during the course of which she expressed her desire to "leave" her property to the appellant if the appellant would reside with her and provide her with medical and personal care. Mrs. Parks, appellee's witness, stated that she attempted to influence the decedent to carry out this desire. While these conversations took place in the latter part of 1950 and the early part of 1951, the testimony is not at all clear as to when the last conversation occurred.

It is clear, however, that in July, 1951, Michael W. Huron, an attorney, was consulted by the decedent and instructed by her to prepare a deed conveying the property, in fee simple, to the appellant. Mr. Huron was not certain who contacted him on the decedent's behalf but was under the impression that it was Mrs. Parks. Prior to this consultation, the attorney was unacquainted with either the appellant or the decedent but had known Mrs. Parks for some time.

Mr. Huron informed the decedent that in his opinion "it was bad policy for old people to convey property to their children during their lifetime" and the decedent, on the strength of this argument, then agreed that he should prepare a will instead of a deed. Before

the will was drawn, however, Mr. Huron was again contacted by telephone (by whom he does not know) and again instructed to prepare a deed. After receiving this call, and without actually drawing the deed, Mr. Huron returned to the decedent's home and again attempted to persuade her to make a will. The decedent was adamant in her insistence upon a deed but Mr. Huron did succeed in securing her assent to a provision reserving a life estate in the property for herself. In addition, Mr. Huron suggested, and the decedent consented, that a supplemental written agreement should be drawn providing that in consideration for the conveyance the appellant would agree to satisfy a lien against the property held by the Commonwealth for public assistance and to pay the decedent's funeral bills not to exceed $800.

The deed was drawn by Mr. Huron and taken to the decedent's home on August 15, 1951, where, after he had read it to her and explained its provisions in Slovak, decedent's native tongue, the decedent executed it. During the course of this visit Mr. Huron again attempted in vain to persuade the decedent to draw a will instead of executing the deed. He stated that the decedent was fully competent, clearly expressed her desires, and completely understood the proceedings. Mr. Huron's wife, who was present as his secretary and notarized the deed, corroborated his testimony completely.

The deed was delivered to the appellant and recorded on August 29, 1951—immediately after the appellant executed the supplemental written agreement mentioned heretofore. The appellant moved into the home in January, 1952, but left, for reasons which remain unexplained, some nine months later. Approximately a year later the present equity action was instituted.

Even the most cursory reading of the pleadings discloses that the decedent's chief gravamen was that the appellant had fraudulently induced her to execute the deed believing it to be a will. The only testimony in this record which could conceivably tend to support these averments was given by the decedent's doctor who stated that decedent's mental faculties were, in general, somewhat impaired. The chancellor ignored these averments and we agree that there is no evidentiary basis to support them. The only evidence at all concerning the preparation and execution of the deed was the uncontradicted testimony of Mr. Huron which reveals, unequivocally, that the decedent was diligently advised and fully understood the legal significance of her act in executing the document he prepared according to her instructions.

The basis for the chancellor's decree nisi is found in two of his conclusions of law. The first of these states: "There was failure of consideration for the deed conveyed by [decedent] to [appellant], namely, satisfaction of existing liens or encumbrances, payment of the funeral bill, and taking care of [decedent's] personal, physical, and financial needs." The other states: "Where one advance in years, and thus enfeebled conveys all her means of substance to another, who occupies a confidential relation towards her, the burden is upon the grantee to show that the transaction in question was fair." We will discuss these conclusions in reverse order.

The chancellor's second conclusion, as quoted, expresses the familiar doctrine applicable in cases involving both inter vivos gifts and bequests where a confidential relationship is proved to exist. Cf: *Zarnowski v. Fidula,* 376 Pa. 602, 605, 103 A. 2d 905; *Williams v. McCarroll,* 374 Pa. 281, 295, 296, 97 A. 2d 14; *Palmer v. Foley et ux.,* 305 Pa. 169, 174, 157 A. 474;

*Williams's Estate,* 299 Pa. 440, 448, 149 A. 728; *Thorndell, Admrx. et al. v. Munn,* 298 Pa. 1, 9, 147 A. 848. In *Weber et al. v. Kline,* 293 Pa. 85, 87, 141 A. 721, this Court stated: "The chief grounds on which gifts or bequests are most frequently attacked are lack of capacity and undue influence. Generally speaking, the burden of showing both incapacity and undue influence rests on those asserting the facts. But this rule does not apply where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it. Though there may be capacity to give, the law, nevertheless, casts this burden on the recipient. The factors which bring this rule into action are fraud, confidential relation, weakness of mind not otherwise incapable, and gross deception. When these appear in the course of an investigation as to the validity of gifts, the burden of proof will immediately shift:[1] [citing cases]" The question, therefore, is whether there was adequate evidence to support the chancellor's finding that a confidential relationship existed at the time of the conveyance between the appellant and the decedent.[2]

A parent-child relationship, standing alone, is not sufficient to establish the existence of a confidential relationship; *Jenne v. Kennedy,* 379 Pa. 555, 558, 109

---

[1] Quoted with approval in *Teats v. Anderson et ux.,* 358 Pa. 523, 527, 528, 58 A. 2d 31; *Lochinger v. Hanlon,* 348 Pa. 29, 35, 33 A. 2d 1.

[2] See also: *McCown et al. v. Fraser et al.,* 327 Pa. 561, 564, 192 A. 674, wherein it was said: "But if it is shown that the donee of a gift stood in a confidential relation to the donor, the burden rests upon the recipient to prove that the transaction was in all respects fair and beyond the reach of suspicion."

A. 2d 307; *Zarnowski v. Fidula*, supra, p. 605; *Andrikanics v. Andrekanics*, 371 Pa. 222, 225, 226, 89 A. 2d 792. In *Hamburg v. Barsky et al.*, 355 Pa. 462, 465, 466, 50 A. 2d 345, this Court, quoting from *Leedom v. Palmer*, 274 Pa. 22, 25, 117 A. 410, stated: "Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible . . ."[3]

This record clearly shows that the appellant did not reside with the decedent at the time the conveyance was made and, in fact, only visited her on week-ends; appellant's two brothers did reside with the decedent and it is impossible to understand how the appellant, while she was absent and they were present, could have exercised "overmastering influence" over the decedent. In addition, there was no evidence that the decedent relied upon or trusted in the appellant's advice and, in fact, this record is replete with instances when the decedent consulted both Mrs. Parks and her husband, as well as others of her daughters, concerning her business affairs. There is no evidence whatever that the appellant ever made any demand of any sort upon the decedent, and it is clear, under the reasoning of the cases cited, that the evidence was insufficient and inadequate to establish confidential relationship.

In view of the lack of evidence of fraud or confidential relationship, and the positive testimony of the

---

[3] Quoted with approval in *Kerr v. O'Donovan*, 389 Pa. 614, 623 134 A. 2d 213; *Shook v. Bergstrasser et ux.*, 356 Pa. 167, 171, 51 A. 2d 681. See also: *Zarnowski v. Fidula*, supra, pp. 605, 606.

scrivener of the deed and his wife that the decedent had been advised and fully understood what she was doing, it is clear that the burden was upon the appellee to prove both lack of capacity and undue influence. The chancellor's finding that confidential relationship had been proved and that the burden of proof had shifted to the appellant has no basis of fact in this record and constitutes clear error.

The chancellor's conclusion that there was failure of consideration for the deed is based primarily upon Mrs. Parks' testimony that the appellant had promised the decedent, in order to induce her to convey the property to her, to assume responsibility for her care and maintenance.

This testimony, as previously mentioned, is based entirely upon conversations which allegedly occurred between the parties prior to the time when Mr. Huron was consulted by the decedent and directed to draw the deed. The testimony discloses no intention by the decedent to grant the appellant only a remainder interest in the property while retaining a life estate herself. At the very most the testimony reveals only a plan whereby the decedent was to will her property to the appellant in return for the appellant's care—a plan apparently later discarded.

There is, however, a greater and infinitely more serious objection to this testimony—an objection which should have precluded its admission into evidence. The record clearly reveals that the parties executed, along with the deed in question, a written supplemental agreement under the terms of which the appellant undertook to perform certain specified acts. It is equally clear that the only effect of Mrs. Parks' testimony is to vary or alter the terms of this written agreement by adding to it by parol an additional undertaking by the appellant. This Court stated, in *Phillips Gas and*

*Oil Co. v. Kline,* 368 Pa. 516, 519, 84 A. 2d 301: "Where no fraud, accident or mistake is averred and proved, and the alleged prior or contemporaneous oral representation or agreement concerns a subject which is specifically dealt with in the written contract, the law is clearly and well settled that the alleged oral representation or agreement is merged in or superseded by the subsequent written contract and cannot vary, modify or supersede the written contract; and hence parol evidence thereof is inadmissible in evidence: Grubb v. Rockey, 366 Pa. 592, 79 A. 2d 255; Walker v. Saricks, 360 Pa. 594, 63 A. 2d 9; Gianni v. Russell and Co., Inc., 281 Pa. 320, 126 A. 791; Speier v. Michelson, 303 Pa. 66, 154 A. 127; O'Brien v. O'Brien, 362 Pa. 66, 66 A. 2d 309; Russell v. Sickles, 306 Pa. 586, 160 A. 610."[4]

In *Gianni v. Russell and Co., Inc.,* supra, pp. 323, 324, this Court said: "When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing." It is manifestly clear that these parties would normally and naturally have included this alleged oral agreement if there had been any such undertaking by the appellant. The alleged oral agreement and the written agreement both relate to the identical subject-matter, i.e. the quantum of the appellant's consideration for the convey-

---

. [4] Cf: *Ziegenfuss v. Ziegenfuss et ux.,* 160 Pa. Superior Ct. 374, 51. A. 2d 508, where parol evidence was admitted to resolve an ambiguity patent on the face of the written agreement.

ance. It is clear that the admission of this testimony into evidence violated the parol evidence rule and that the chancellor erred both in admitting it and, after he had done so, basing a conclusion of law upon it.

The chancellor's further finding that the appellant failed to perform her agreement to pay the decedent's funeral bill is clearly without basis in fact. This Court fails to find any conceivable record support for such a finding in view of the fact that the instant action was commenced prior to the decedent's death. And finally, we have searched this record in vain for any evidence to support the finding that the appellant refused to satisfy the Commonwealth's lien for public assistance. This conclusion of the chancellor, also, has no basis in fact and consequently constitutes clear error.

Family disputes in the courts are always distressing and melancholy affairs and it is unfortunate that our disposition of this matter cannot serve to reunite the dissident factions among the decedent's family. It nevertheless remains true that this Court has no choice but to afford full sanctity to the decedent's written deed since the appellee has completely failed to prove that there was any irregularity in its preparation or execution which would preclude us from giving it full force and effect as the only legitimate expression of the decedent's intent with regard to the disposition of her property. It follows that the learned court below erred in dismissing the appellant's exceptions to the chancellor's adjudication, findings of fact and conclusions of law and in making final his decree nisi.

Decree reversed. Costs to be paid by the appellees.