## Hunter v. Hunter

*James R. Humer,* for plaintiffs.
*Arthur M. Feld,* for defendants.

SHEELY, *J.,* June 22, 1981—On January 29, 1981, plaintiffs, George A. Hunter and Mary V. Hunter, brought an action in equity against defendants, George A. Hunter, Jr. and American Finance Consumer Discount Co. (hereinafter American Finance) now Security Pacific Consumer Discount Co. (hereinafter Security Pacific). Plaintiffs ask the court to direct defendant, George A. Hunter, Jr., to pay in full the mortgage obligation due defendant Security Pacific, and to execute a deed conveying to plaintiffs legal title to the premises described in 21 "L" 130. (Exhibit B of the complaint). In addition, plaintiffs ask that the court enjoin defendant, Security Pacific, from issuing a

writ of execution upon the mortgage recorded in Cumberland County Mortgage Book 675, page 57, now in default; that the court direct defendant, Security Pacific, to enter full satisfaction of this mortgage; and that the court award to plaintiffs the costs of this proceeding.

The property in question was originally purchased by plaintiffs in 1964. Plaintiffs immediately transferred this property to a then ten years old George Hunter, Jr., defendant. This action was taken, according to plaintiffs, for their own financial convenience so that this property would not become involved with the financial arrangements concerning an adjacent property they had purchased in 1963. Plaintiffs subsequently erected an antique shop on the son's property. Defendant, George Hunter, Jr., has held legal title to this property since 1964. When defendant, George Hunter, Jr., was 25 years old, he mortgaged the property in question to defendant, American Finance.

There is nothing on the deed or any recorded documents to indicate that any interest in this property has been retained by the grantors. Plaintiffs have not asserted that the property was transferred in connection with any resulting trust or any other trust. Defendant, George Hunter, Jr., has neither made any appearance nor submitted any answer in connection with this case.

Plaintiffs allege by their complaint, inter alia, that defendant, George Hunter, Jr., erroneously described the mortgaged premises; that defendant American Finance, failed to make a reasonable inspection of the mortgaged premises to determine the person or persons in possession thereof and whether such persons were occupying the same under claim of ownership or otherwise; that defendant, George Hunter, Jr.'s, actions in mortgag-

ing the premises to which he held bare legal title were a breach of a confidential relationship and that it constituted a fraud upon both plaintiffs and defendants, American Finance and Security Pacific; and that defendant, American Finance's, acceptance of such mortgage from defendant, George A. Hunter, Jr., without having made a reasonable inquiry as to the persons in possession and the character of their occupancy constituted negligence as to plaintiffs.

Defendant, Security Pacific, has filed preliminary objections to the complaint in the nature of a demurrer and laches. In ruling on a demurrer, the court must accept as true all the well-pleaded facts in a complaint and all inferences reasonably deducible therefrom: Gekas v. Shapp, 469 Pa. 1, 364 A. 2d 691 (1976). In ruling on a demurrer, the court may not consider factual matters not disclosed in the record: Muia v. Fazzini, 416 Pa. 377, 205 A. 2d 856 (1965). In order to sustain the demurrer, it is essential that plaintiffs' complaint indicate on its face that his claim cannot be sustained, and that the law will not permit recovery: Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A. 2d 867 (1970).

Plaintiffs assert that defendant, George Hunter, Jr., ambiguously described the mortgaged premises by listing the address of the premises as 833 West Louther Street, Carlisle, a totally separate property from the title reference and from that shown on the description given on page two of the mortgage attached to the complaint as exhibit B. A mortgage, to be effective, must describe the property sufficiently to enable it to be located and identified. Real estate can be described by reference to a plan, a plot, a lot number, a prior conveyance, by name, or by reference to another document, such as

a survey or another deed. So long as any of these methods adequately describes the property, it will be deemed sufficient to support an execution or an action! O'Connell v. Cease, 267 Pa. 288, 110 Atl. 266 (1920); Armstrong v. Boyd, 3 P. & W. 458 (1832).[1]

Despite an erroneous street address, defendant, George Hunter, Jr.'s, description of the property in the mortgage document is clearly the same property that is described in the deed which defendant George Hunter, Jr., holds by legal title. So long as the total description cf the property makes it clear which property is being referred to, typographical errors or slight errors in the description of the property will not nullify the effect of the recorded document: Snow v. Corsica Construction Co., Inc., 459 Pa. 528, 329 A. 2d 887 (1974); Berkman v. Altoona Trust Co., 332 Pa. 545, 2 A. 2d 826 (1938). The description defendant, George Hunter, Jr., furnished is sufficient to identify and locate the property in question and to support an execution or an action in ejectment.

Plaintiffs also assert that defendant, American Finance, negligently failed to make a reasonable inspection of the mortgaged premises, which include an antique shop in plaintiffs' possession. A number of cases hold that a prospective mortgagee does have a duty to inquire of any occupants upon the prospective mortgagor's property whether they might have some title to, or interest in, the premises which is adverse to the prospective mortgagor's interest or title: Sidle v. Kaufman, 345 Pa. 549, 29 A. 2d 77 (1942); Woods v. Farmere, 7 Watts 382 (1838); Jacques v. Weeks, 7 Watts 261 (1838). A

---

1. See also, Clothier, Incorporation by Reference of Descriptions of Real Estate, 30 Pa.B.A.Q. 47 (1958).

mortgagee who fails in his duty to make inquiry concerning the basis of the possessor's interest takes subject to that possessor's interest: Kinch v. Fluke, 311 Pa. 405, 166 Atl. 905 (1933). However, the plaintiffs' mere possession is not superior to a legal title: Packer's Lessee v. Gonsalus, 10 S. & R. 147 (1823).

It should be noted, however, that in this instance it was plaintiff grantors who remained in possession after the conveyance. The general rule that possession is notice to a prospective mortgagee has been held not to apply when a grantor remains in possesion after giving a full recorded deed. A purchaser or encumbrancer from the grantor's grantee is not required to inquire of the grantor in possession whether such grantor reserved any interest in the land conveyed. The grantor's deed is held to be conclusive. In effect, by conveying such a deed, the grantor raises a presumption that he has made no reservation, that his continued possession is merely permissive and not antagonistic to his grant and that such continued possession is not a notice of other rights. If there are any secret agreements or other secret rights not recorded on the deed, it is the possessor's duty to enter such agreements or rights upon the records of the the county to prevent innocent purchasers from being deceived: Scott v. Gallagher, 14 S. & R. 332 (1826). This reasoning is also approved in dictum in Stiffler v. Retzlaff, 7 Sadler 232, 11 Atl. 876 (1887); Rowe v. Ream, 105 Pa. 543 (1884); Woods v. Farmere, 7 Watts 382 (1838).

Plaintiffs also assert that defendant, George Hunter, Jr., knew plaintiffs were the true owners of the property and that title to the property was placed in defendant, George Hunter Jr.'s, name solely for plaintiffs' financial convenience. Plaintiffs took such action to insure that the property would not become involved with the financing ar-

rangements for plaintiffs' residence situated immediately adjoining to the property. Plaintiffs also allege that defendant, George Hunter, Jr., perpetrated a fraud upon plaintiffs by mortgaging this property.

Plaintiffs cite Malamed v. Sedelsky, 367 Pa. 353, 80 A. 2d 853 (1951), as supporting a holding that the title to the property should be conveyed to them. In that case, however, the parties who had provided the purchase money for the property had had the deed returned to them before the party who had been holding the title executed a judgment note upon the property. When the deed was returned, a trust was extinguished and the creditor could acquire no rights to such property once the trust had ceased to exist.

The doctrine of constructive notice through possession upon which plaintiffs wish to rely is an old English doctrine. This doctrine held that the possession of a tenant was notice of his actual interest, whether such interest was that of a lessee or a purchaser. This doctrine developed in olden times when many English occupants had little or no opportunity to register a deed of title and was based on the theory that nothing short of holding possession to be constructive notice could protect such an occupant's interests. In Pennsylvania, however, every written title can be registered and where an occupant only announces or records a part of his interest or announces only one of his titles to a certain property, he is acting in a manner which has a great tendency to mislead purchasers. For that reason, the English doctrine of constructive notice was held not to apply to grantor-grantee relationships where a deed was registered and the grantor remained in possession. See Woods v. Farmere, supra.

Pennsylvania was not the only state to so limit the

application of the English doctrine. Early in the 19th century, noted American jurists admonished Courts of Equity in the United States, where registration of deeds as a matter of title was universally provided for, not to enlarge this English doctrine of constructive notice or to follow the English cases on the subject without regard to just application to the circumstances of the United States and to the structure of its law. It was also pointed out that a number of then recent English cases were also limiting the application of the doctrine: Mann v. Flagg, 9 F. Cas. 202, 227 (1837). It was felt that by thus limiting the application of this English doctrine secret claims would be prevented from existing on property, independent of what was recorded on its deeds or mortgages, thereby decreasing litigation and speedily removing obstacles to the free disposal and circulation of property so necessary to the existence of a healthy and vigorous economy and society. See Packard v. The Louisa, 18 F. Cas. 958 (1846). For those reasons, a mortgagee who advanced money on the credit of land was regarded as a purchaser and was protected from secret equities and trusts: Bond v. Bunting, 78 Pa. 210 (1875); Martin v. Jackson, 27 Pa. 504 (1856).[2]

---

2. Early in colonial times mortgagees had been held to be purchasers under the Statute of Elizabeth, 1571, 13 Eliz. 1,c.5. As such, mortgagees were protected against secret equities and trusts of which they had no notice. Pennsylvania retained this statute after the revolutionary war and officially incorporated it in 1808. See 3 Binney 593 (1808), appendix, The Report of the Judges of the Supreme Court of Pennsylvania (1808).

This statute had been passed during a time of an increasing number of fraudulent conveyances. These fraudulent conveyances were generally being made to prevent creditors and lords from collecting the payment of debts and services to which they were justly entitled. Such conveyances were leading to the overthrow of true and plain dealing and disrupting

Plaintiffs also assert that defendant, George A. Hunter, Jr., violated a confidential relationship that he held with plaintiffs, his parents. A mere parent-child relationship, however, is not sufficient to constitute a confidential relationship: Jenne v. Kennedy, 379 Pa. 555, 109 A. 2d 307 (1954); Zarnowski v. Fidula, 376 Pa. 602, 103 A. 2d 905 (1954). There is no presumption of a confidential relationship in a transfer of property from a parent to child: Andrikanics v. Andrekanics, 371 Pa. 222, 89 A. 2d 792 (1952). There is, however, a presumption of a gift to the child where a parent furnishes the purchase money and title is taken in the name of the child: Ehnes v. Yowell, 374 Pa. 17, 97 A. 2d 56 (1953). Confidential relationships are generally found where it is probable that a party can take unfair advantage of a relationship because of overmastering influence on the one side, or weakness, dependence or trust justifiably reposed on the other side: Stepp v. Frampton, 179 Pa. 284, 36 Atl. 177(1897).[3] The burden of proving a confidential

the contractual relationships upon which any civil society must depend. The statute voided such conveyances regardless of any pretense or feigned consideration. It did not apply to estates and lands conveyed upon good consideration to bona fide purchasers, not having, at the time of such a conveyance any manner of notice or knowledge of such fraud.

This statute is reprinted in 39 P.S. Appendix to Chapter 2, and is interpreted in Wilt v. Franklin, 1 Binney 501 (1809). For its application and construction in Pennsylvania with reference to mortgagees or grantor-grantee relationships, see Hood v. Fahnestock, 8 Watts 489 (1839); Sweetzer v. Atterbury, 100 Pa. 18 (1882); Fretz v. Gilhan, 16 Pa.C.C. 586, 5 Dist. R. 21 (1895). It has since been largely replaced by the Uniform Fraudulent Conveyance Act of May 21, 1921, P.L. 1045, sec. 9, 39 P.S. §351-63.

3. See generally, Note, Confidential Relationships in Pennsylvania Law, 97 U. Pa. L. Rev. 712 (1949).

relationship is upon plaintiffs: Fuller v. Fuller, 372 Pa. 239, 93 A. 2d 462 (1953). It is obvious that under these facts, plaintiffs could not establish a confidential relationship where the grantee was ten years old at the time the deed was delivered.

While the court certainly does not wish to cast any aspersions upon plaintiffs' good faith and intergity in this particular case, the disruptive potential of making such awards to other plaintiffs in similar actions should be addressed as a matter of public policy. If plaintiffs can convey land to minors for plaintiffs' own financial convenience, not have the title reconveyed when the minor reaches majority, and then years later ask for a court ordered reconveyance of title, such parties could conceivably arrange to pass titles back and forth in efforts to avoid just financial obligations due creditors. This would lead to an increasing number of collusive and fraudulent family arrangements and to increasing litigation. The disruption that would result from such practices would threaten the stability of our modern economy. To hold for plaintiffs would lead to a resurgence of the very problems the development of the law in this area has been designed to eliminate.

### ORDER

And now, June 22, 1981, defendants' preliminary objection demurring to plaintiffs' complaint is sustained and plaintiffs are given 20 days to file an amended complaint.