J-S39025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CHARLES W. YOUNG, AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ROBERT YOUNG AND RAINER YOUNG | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1723 MDA 2017 |

Appeal from the Order Entered October 4, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
84923

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 14, 2018**

Robert Young and Rainier Young (Appellants) appeal *pro se* from the order denying their petitions to be appointed caretakers of their elderly father, Charles Y. Young (Mr. Young), and for the return of a Mercedes sedan that Mr. Young had gifted to a third party.  We affirm.

For ease of discussion, we refer to Robert Young as "Appellant," and to both Robert and Rainier together as "Appellants."[1]  On July 15, 2016, Appellant filed a counseled petition to adjudicate Mr. Young as an incapacitated person, and for the appointment of Appellant as his guardian. Appellant averred that Mr. Young, then 80 years old, suffered from dementia

---

[1] As noted by the trial court, "Rainier has a fairly extensive criminal history and has been an inmate in SCI Houtzdale at all times during the pendency of this guardianship matter.  Given his incarceration, he is not a viable caregiver or guardian candidate."  Trial Court Opinion, 12/7/17, at 2.

and was unable to manage his financial affairs or care for himself or his home. Pertinently, Appellant also claimed that he was filing the petition "due to the fact that [Mr. Young] is being exploited financially and otherwise by Alicia Lee Friday." Appellant's Petition for Adjudication of Incapacity and Appointment of Plenary Guardian, 7/15/16, at 2.

On November 3, 2016, "[w]ith the agreement of the parties," the Orphans' Court entered a final order adjudicating Mr. Young to be an incapacitated person and appointing Sharon Gray, Esquire (Guardian), as limited guardian of his person and estate. Orphans' Court Opinion, 12/7/17, at 1. The order provided the Guardian with authority to, *inter alia*, approve where Mr. Young will live, "attempt to honor his wishes to the greatest extent possible in all cases," and investigate any transfers of money or property made by him between January 1 and November 3, 2016. Order, 11/4/17, at 1-2.

On March 10, 2017, the Guardian filed a petition seeking the court's permission to sell Mr. Young's house in Berks County, so that the proceeds could be used for his support. The petition acknowledged that Mr. Young wished to buy a smaller house, but also stated that Mr. Young was presently living in Fairless Hills, Pennsylvania with Ms. Friday. On June 7, 2017, the Orphans' Court granted permission for the sale of Mr. Young's house.

On August 30, 2017, Appellants filed the two underlying petitions *pro se*. The first petition sought the return of the Mercedes, or the value thereof, to Mr. Young's estate. Appellants claimed that in August of 2016 — after Mr.

Young was diagnosed with dementia but before he was adjudicated incapacitated — he was unduly influenced by Ms. Friday, "a designing person," to transfer title of this car to her. Appellants' second petition requested that Mr. Young be permitted to live at Appellant's home, while the Guardian continued to act as limited guardian.[2] Appellants alleged that Mr. Young was "forceful[ly] transfer[red] to a nursing home against his will" and that the Guardian had not communicated with the family about Mr. Young's medical status or even provided his address. Appellants' Petition to Have Next of Kin Be Caretaker, 8/30/17, at 1.

The Guardian filed an answer to Appellants' petitions, denying that Mr. Young was forcefully transferred to a nursing home. The Guardian claimed that a relative[3] had driven Mr. Young to Florida and left him there, and that on July 10, 2017, the Guardian was informed by a hospital in Florida that Mr. Young was there and would be discharged in two days.[4] The Guardian

---

[2] The body of Appellants' petition did not acknowledge that Rainier was incarcerated, although the signature line for Rainier stated he was an inmate at SCI Houtzdale.

[3] In her answer, the Guardian stated that Mr. Young's half-brother, "Clem," took him to Florida, but at the hearing, she stated she was not sure who took him. *See* N.T., 10/4/17, at 5. In its opinion, the Orphans' Court stated that it was Appellant who took Mr. Young to Florida. Orphans' Court Opinion, 12/7/17, at 2.

[4] The Guardian attached a police report from Florida, which stated that Mr. Young was found wandering about one block from the home of his sister and her husband, Bertha and Richard Livingstone. Mr. Young told the police officer

arranged for Mr. Young to be transported back to Pennsylvania and moved into Keystone Assisted Living Facility after it became apparent that Mr. Young would not be able to live independently. The Guardian directed that Mr. Young's family members may visit him at any time, but may not leave with him, as the Guardian feared that they may not return him to the facility. Finally, the Guardian opined that both Appellants would be poor caretakers, as Rainier was incarcerated and Appellant allegedly "has a problem with hoarding . . . and cleanliness." Guardian's Answer, 10/3/17, at 2.

On October 4, 2017, the Orphans' Court conducted a hearing on the petitions, at which the Guardian, Mr. Young, and Appellant appeared. Appellant stated that he was self-employed, worked from home, and had cared for Mr. Young before the adjudication. Appellant maintained that Mr. Young was in relatively good health and wanted to live with Appellant. N.T., 10/4/17, at 3-4. When the Orphans' Court pointed out that Rainier had an extensive criminal record, Appellant responded that he alone could care for his father. *Id.* at 4. The Guardian reiterated that after Mr. Young was adjudicated incapacitated, a family member took him to Florida, and it was

___

that he "escaped" from his sister's home and wanted to return to Pennsylvania. Meanwhile, Mr. Livingstone was driving around looking for Mr. Young and came upon the officer and Mr. Young. The officer accompanied Mr. Livingstone and Mr. Young home. Shortly thereafter, however, the officer returned to the residence because Mr. Young called 911. Mr. Young told the officer that the Livingstones would not let him leave and complained of leg and arm pain consistent with a stroke. EMS were called and transported Mr. Young to the hospital.

the Guardian who arranged for him to be picked up from the hospital and transported back to Pennsylvania. *Id.* at 5. The Guardian further stated that Mr. Young was "doing very well" at the assisted living facility. *Id.* at 5-6. The Guardian explained that her initial plan was for Mr. Young to sell his house and buy a smaller house, but Mr. Young's doctor had since opined that he could not live independently.

The Orphans' Court denied Appellants' request to have Mr. Young live with Appellant. *Id.* at 6. The Orphans' Court found that the Guardian was appropriately tending to Mr. Young's needs; it explained that Appellant's "interest in allowing Rainier to be co-guardian did not instill confidence in the Court as to [Appellant's] decision-making abilities," and that the history of this case, including a family member taking Mr. Young to Florida despite his not wanting to be there, did not support placing Mr. Young in Appellant's care. Orphans' Court Opinion, 12/7/17, at 2. With respect to Appellants' petition for the return of the Mercedes, the Orphans' Court held that Appellants lacked standing, as only a guardian has authority over the estate of an incapacitated person to bring such an action. *Id.* at 3. The Orphans' Court thus denied both of Appellants' petitions with prejudice.

Appellants timely appealed. Both the Orphans' Court and Appellants have complied with Pa.R.A.P. 1925. On appeal, Appellants present the following issues, which we have reordered for ease of disposition as follows:

- 5 -

1. Whether [the] Orphan's Court denied Rainer Young due process and equal protection of law, by not allowing him to attend hearing *via* video conference, when he is listed as a party in filed complaint?

2. Whether [the] Guardian . . . ignored client [Mr. Young's] wishes not to live in Keystone Assi[s]tant Living Home, when he clearly requested to live with his son [Appellant]?

3. Whether [the] Orphan's Court Judge showed bias and/or abuse of discretion by refusing to address Appellant's claim in accordance with Title 20 Pa.C.S.A. § 5502, during hearing of 10/4/2017?

4. Whether [the] Guardian . . . breached her guardianship duties by not procur[ ]ing all illegally transferred/inappropriate property and funds from estate dating back to January 1, 2016, pursuant to Court Order of 11/3/2016?

Appellants' Brief at 3 (unpaginated).[5]

First, Appellants aver that Rainier's due process rights were violated because, although he was a party to the "filed complaint," he was not permitted to attend the hearing by video conference. *Id.* at 12. Appellants also contend that Rainier's incarceration was not relevant to Mr. Young's well-being and that the court's reference to it at the hearing denied Rainier the opportunity to respond.

We hold that this issue is waived because Appellants failed to raise it before the Orphans' Court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

---

[5] Per Appellants' table of contents, we deem the first two pages of their brief as pages "(i)" and "(ii)". Page "1" begins with the statement of jurisdiction.

The certified record does not include any written request for Rainier to appear by videoconference, and there was no mention at the hearing that Appellants made such a request or that Rainier's rights were violated by his not attending the hearing. Accordingly, no relief is due.

We next address Appellants' second and third claims together. Appellants allege that the Guardian knowingly ignored Mr. Young's desire to live with Appellant, and his desire to not live at the assisted-living facility. Appellants maintain that they have not abused or exploited their father, that the family can meet his financial and physical needs, and that allowing him to live with Appellant would promote family bonds and protect the funds in Mr. Young's estate, as the estate currently pays $6,000 monthly for assisted living. Finally, Appellants allege that although the Guardian knew of Ms. Friday's extensive criminal background, the Guardian allowed Mr. Young to live with Ms. Friday and the Guardian gave money to Ms. Friday, "who eventually took all provided funds and threw [Mr.] Young out of her home, forcing him to live in the streets." Appellants' Brief at 7.

In Appellants' third issue, they assert that the Orphans' Court abused its discretion by refusing to address their claims pursuant to 20 Pa.C.S.A. § 5502. That statute provides:

> Recognizing that every individual has unique needs and differing abilities, it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them, which assists these persons in meeting the essential requirements for their physical health and

safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S.A. § 5502. In support, Appellants allege that the Orphans' Court denied their attempt to protect the estate of their father, who was the victim of financial exploitation; that at the hearing, the court "clearly did not want to hear the issues and instead "tried to intimidate Appellant"; that the court failed to ask Mr. Young where he wanted to live, but allowed him to state his intention with respect to the car; and the court refused to allow Rainier to attend the hearing but referred to his incarceration, despite his incarceration having no bearing on this matter.

"Initially, we examine our standard of review of the rulings of an orphans' court. The orphans' court's factual findings receive the same deference accorded factual findings of a jury, but we must ensure that the decision of the court is free from legal error." *In re Estate of Rosengarten*, 871 A.2d 1249, 1253 (Pa. Super. 2005).

In their petitions and at the hearing, Appellants did not seek the removal of the Guardian, but instead acknowledged that they wished for her to continue to serve as the guardian of Mr. Young's estate while Mr. Young lived with Appellant. Accordingly, any challenge to the Guardian's continued service as the guardian is waived. *See* Pa.R.A.P. 302(a). With respect to Mr. Young's

wishes as to where he lives, the Guardian argues that Mr. Young has expressed to her that he is happy at the assisted living facility and that he does not want to live with Appellant. Guardian's Brief at 9. No evidence was adduced, however, and the Orphans' Court made no factual findings, as to whether Mr. Young desired to live with Appellant. Instead, the court based its denial of Appellants' request for Mr. Young to live with Appellant on Rainier's extensive criminal history and incarceration, Appellant's questionable judgment in proposing that Rainier be a co-caretaker, a family member's taking Mr. Young to Florida despite Mr. Young's desire not to be there, and the Guardian's proven ability to tend to Mr. Young's needs. Orphans' Court Opinion, 12/7/17, at 2. The court also noted that the family may visit Mr. Young at any time. We defer to the Orphans' Court's determinations, and affirm the denial of Appellants' petition for Mr. Young to live with Appellant. *See Estate of Rosengarten*, 871 A.2d at 1253.

In their final issue, Appellants reiterate that the Guardian breached her duties by not recovering "all illegally transferred . . . property and funds," as required by the November 3, 2016 order (adjudicating Mr. Young as an incapacitated person). Appellants' Brief at 7. Appellants contend that Ms. Friday and Mr. Young's half-brother, Clem Hutchinson, took advantage of Mr. Young's diminished mental state; that Ms. Friday "siphoned" $100,000 from Mr. Young and designed to have the Mercedes transferred to her, and Mr. Hutchinson took Mr. Young to Florida, "had two checks deposited into his

personal account[,] then threw [Mr.] Young out of his home in Florida, which lead to his hospitalization."[6] *Id.* at 8.

As noted above, the Orphans' Court determined that Appellants lacked standing, where "only the guardian has authority over the estate of the incapacitated person, which includes the filing of actions such as this." Trial Court Opinion, 12/7/17 at 3. Appellants do not address the Orphans' Court's finding that they lacked standing to seek the return of property to Mr. Young's estate. On this basis, we again find waiver. *See Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (it is the appellant's responsibility to establish both the purported errors and any entitlement to relief, and arguments not appropriately developed are waived). Even in the absence of waiver, we note that "[a] party has standing if he has been aggrieved by a ruling, or in other words, if he demonstrates that he has a substantial, direct and immediate interest in the outcome of the litigation." *Estate of Rosengarten*, 871 A.2d at 1256. *See also Palmer v. Foley*, 157 A. 474, 476 (Pa. 1931) (holding daughter and son-in-law of an incapacitated person lacked standing to challenge whether property should be transferred to the incapacitated person or to the care of her trustee and stating "A decree, although irregular, will not be reversed except at the instance of a party injured thereby.").

---

[6] The record is silent as to Appellants' allegation regarding Mr. Hutchinson.

Accordingly, we hold the Orphans' Court did not err in concluding Appellants lacked standing to seek the return of property to the estate of Mr. Young.

For the above reasons, we find no merit to Appellants' claims. We therefore affirm the trial court's order denying their petitions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/18