620 A.2d 21

**Florence WALSH, Appellee,**

v.

**Robert J. BUCALO and Geraldine Bucalo, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1992.

Filed Feb. 9, 1993.

Emil L. Iannelli, Southampton, for appellants.

Leonard Spear, Philadelphia, for appellee.

Before WIEAND, FORD ELLIOTT and HOFFMAN, JJ.

WIEAND, Judge.

In this appeal we are asked to review an order of the trial court which set aside a deed by which the grantor, having created a life estate in herself, conveyed the remainder interest in real estate to her son. After careful review, we conclude that there was an inadequate basis for disturbing the sanctity of the conveyance; and, therefore, we reverse.

Florence Walsh and her first husband, Frank D. Bucalo, owned as tenants by the entireties a residential property at 9654 Clark Street in Philadelphia. Frank Bucalo died February 21, 1986, leaving his widow, Florence, as the sole owner of the real estate. By deed dated October 3, 1986 and duly recorded, she created a life estate in herself and conveyed the remainder interest in the real estate to her son, Robert J. Bucalo. Later, Florence Bucalo met and contemplated marriage with Jim Walsh. Her son disapproved, and, in the summer of 1988, the impending marriage was the source of a serious argument. The mother told her son if he didn't change his attitude about Walsh, the son would be cut out of his mother's will. Finally, in June, 1989, the now Mrs. Walsh demanded a reconveyance of the remainder interest which had been conveyed to her son in 1986. When the son refused his mother's request, she filed an action in equity to set aside the deed. After a trial, the court granted relief and ordered a reconveyance. Post-trial relief was denied, and Bucalo appealed.[1]

"[A] conveyance of real property by way of deed is presumptively valid and will not be set aside unless it is shown by clear and convincing evidence that the transfer was improperly induced by fraud or other misconduct on the part of

1. Because of the trial judge's retirement, the case was certified to the Superior Court without a Rule 1925(a) opinion.

the transferee." *Wagner v. Wagner,* 466 Pa. 532, 541, 353 A.2d 819, 823–824 (1976). Written instruments are not to be set aside except upon convincing testimony that their execution was tainted by either actual or constructive fraud, or that the person executing the instrument lacked sufficient mental capacity. *Weir by Gasper v. Estate of Ciao,* 521 Pa. 491, 502, 556 A.2d 819, 824 (1989). The burden of proving that the transfer was the product of a lack of mental capacity, undue influence, fraud, or a confidential relation is on the person seeking to set aside the deed. *Gracey v. Rutherford,* 366 Pa. 196, 199, 77 A.2d 358, 359 (1951). Here, Mrs. Walsh was the party who sought cancellation of the deed; and, therefore, the burden was on her to prove that the deed was the product of improper conduct on the part of her son.

In support of her conclusion that the deed should be set aside, Walsh advanced two separate arguments. First, she contended that a confidential relationship had existed between herself and appellant and that, therefore, the burden shifted to appellant to show that the transaction had been untainted by any impropriety and was the product of appellee's free, voluntary, and clearly understood action. Second, she contended that equity required the deed to be declared void because of a failure of consideration. We will address each of appellee's contentions.

In *Weir by Gasper v. Estate of Ciao, supra,* the Supreme Court defined a confidential relationship, and its attendant ramifications, as follows:

This court has determined that a confidential relationship exists when the circumstances make it certain that the parties do not deal on equal terms; where, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed. In both situations an unfair advantage is possible. *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922). Such a relation is created between two persons when it is established that one occupies a superior position over the other; intellectually, physically, governmentally, or morally, with the opportunity to use the superiority to the other's disad-

vantage. *[Union Trust Co. v.] Cwynar*, 388 Pa. [644] at 653, 131 A.2d [133] at 137 [1957]. A confidential relationship is not limited to any particular association of parties, but exists wherever one occupies such a position of advisor or counselor as reasonable to inspire confidence that he will act in good faith for the other's interest. *Drob v. Jaffe*, 351 Pa. 297, 300, 41 A.2d 407, 408 (1945). Where a confidential relationship exists, the law presumes the transaction voidable unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond reach of suspicion. *Leedom; Ruggieri v. West Forum Corp.*, 444 Pa. 175, 282 A.2d 304 (1971); *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971). However:

> where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts; care must be used not to confound acts springing from natural love and affection with confidential relations, and, while the line of demarcation may in some cases be narrow, nevertheless, to sustain the integrity of gifts based on such affection in family relations, it is necessary the distinction should exist.

*Leedom*, 274 Pa. at 26, 117 A. at 412.

*Id.* 521 Pa. at 504–505, 556 A.2d at 825–826.

 In the instant case, the fact that the relationship between Walsh and Bucalo was one of parent and child did not, in and by itself, create a confidential relationship. *Sendick v. Matvey*, 391 Pa. 286, 295, 138 A.2d 92, 96–97 (1957). "[T]he existence of a close family relationship *per se* does not justify recognition of a confidential relationship." *Truver v. Kennedy*, 425 Pa. 294, 306, 229 A.2d 468, 474 (1967). Instead, it is necessary to show that as a result of a relationship between two parties, one depended upon the other, who was able to exercise an overmastering influence over the other.

■ Here, the evidence was insufficient to establish a confidential relationship between mother and son. The mother was neither dependent upon her son nor weak; and the son did not exert an overmastering influence over his mother. There was no evidence that the son had handled his mother's affairs or that she had generally looked to him for financial or other advice. The mother had been employed as comptroller for an automobile business for twenty-one (21) years and was quite capable of managing her own affairs. The matter of the mother's real estate was discussed between mother and son approximately six months after the death of mother's husband. It was then suggested by the son that it might be possible to transfer title in a manner that would avoid the inheritance tax. He also suggested that his mother might wish to consult a lawyer about it. When she said she knew of no lawyer, the son suggested the name of a lawyer who previously had handled a real estate transaction for him. However, he did not go to the lawyer's office with his mother to discuss preparation of a deed. More than seven (7) months after her husband's death, on October 3, 1986, the appellee-mother executed a deed conveying a remainder interest in the real estate to her son.

At the close of the trial, the trial judge appropriately observed:

> Well, the Court is called upon to decide whether a mother who conveyed her property to her son, retaining a life estate in herself, should have the remainder interest conveyed back to her because, as she says, she was confused, emotionally distressed, suffering from anxiety and didn't understand what she was doing at the time of the conveyance.
>
> . . . .
>
> The Court has made several suggestions to counsel as to how this matter could be settled, and it seems that the mother objects to anything other than a full conveyance back to her. The mother has failed to convince this Court that she was suffering from any type of depression, anxiety or confusion at the time that she made the conveyance to

her son. There is no showing here that there has been any action by the son which would lead this Court to believe that the mother was under any undue influence.

These observations by the trial court are consistent with its failure to find a confidential relationship and with our own review of the record. It seems patently clear, therefore, that the trial court's decree setting aside the deed cannot be supported on grounds that the deed was the product of undue influence.

The trial court's action also cannot be supported by the appellee-mother's contention that there was a want or failure of consideration. The deed recited a consideration of "ONE DOLLAR ($1.00) . . . unto her well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged." This was sufficient consideration for the conveyance. *Barnes v. McCandless Township Sanitary Authority*, 8 Pa.Commw. 457, 303 A.2d 228 (1973). See also: *Lafayette v. Brinham*, 363 Pa. 360, 69 A.2d 130 (1949); *Sellers v. Sellers*, 316 Pa. 404, 175 A. 401 (1934). The deed, moreover, was under seal. See: *Caplan v. Pittsburgh*, 375 Pa. 268, 100 A.2d 380 (1953).

"[A]s a general rule a deed which is otherwise valid will not be invalidated because of total or partial failure of consideration." *Yuhas v. Schmidt*, 434 Pa. 447, 459, 258 A.2d 616, 622 (1969). The deed in this case was absolute and unconditional. It was not conditioned upon future support of the mother by her son. Moreover and in any event, the evidence showed that when the mother requested assistance, the son advanced money to pay an insurance premium in 1986 and real estate taxes in 1987. There was no evidence of additional needs with respect to which appellant failed to respond.

Appellee's asserted depression and confusion following her husband's death do not support a decree setting aside her deed. More likely, the mother's desire to set aside the deed was generated by her remarriage. Until that time, neither party had any objection to the deed. The differences of opinion regarding the new husband did not furnish an

adequate reason for setting aside the prior deed by which the appellee-mother had conveyed a remainder interest in the real estate to her son. As the Supreme Court appropriately observed in *Sendick v. Matvey, supra:*

> Family disputes in the courts are always distressing and melancholy affairs and it is unfortunate that our disposition of this matter cannot serve to reunite the dissident factions among the [ ] family. It nevertheless remains true that this Court has no choice but to afford full sanctity to the decedent's written deed since the appellee has completely failed to prove that there was any irregularity in its preparation or execution which would preclude us from giving it full force and effect...."

*Id.* 391 Pa. at 299, 138 A.2d at 98.

Order reversed.