J-S11015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WILLIAM E. RALSTON, NORMA MCLAUGHLIN, PATRICIA A. KOREN AND RONALD A. RALSTON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| RANDY MOORE, EXECUTOR OF THE ESTATE OF JANET M. MOORE; AND ESTATE OF ARLENE L. RALSTON, DECEASED, | |
| Appellee | No. 1284 WDA 2016 |

Appeal from the Order of August 2, 2016
In the Court of Common Pleas of Crawford County
Civil Division, at No(s): 2012-1059

BEFORE:  OLSON and RANSOM, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                       **FILED APRIL 17, 2017**

Appellants, William E. Ralston, Norma McLaughlin, Patricia A. Koren, and Ronald A. Ralston, appeal from the order entered on August 2, 2016, granting a motion for summary judgment filed by Randy Moore.  Upon careful consideration, we affirm.

The trial court summarized the facts of this case as follows:

> Clifford E. Ralston died on January 5, 2000, owning with his wife, Arlene L. Ralston, three parcels of land in South Shenango Township, as tenants by the entireties.  [These parcels included a residence owned by the Ralstons and two additional plots.]  Two weeks later, Mrs. Ralston granted power of attorney to her elder son, [] William E. Ralston, and youngest daughter, [] Janet Moore.  She also executed a will that left everything to her seven children equally.

*Former Justice specially assigned to the Superior Court.

Eight years later, aged eighty-two and nearly blind from macular degeneration, Mrs. Ralston went to live with [her daughter, Janet Moore,] and her husband, Randy Moore. The following year, on September 9, 2009, [Mrs. Ralston] signed a new will giving [28%] of her net estate to [Janet Moore] and [12%] to each of her other six children.

By two deeds which are the subject of the instant [appeal], both dated May 20, 2010 and recorded the following day, Mrs. Ralston conveyed an undivided one-half interest in her real estate to [Janet Moore. Following this conveyance, Mrs. Ralston and Janet Moore] then held title to [Mrs. Ralston's] former home on 31.36 acres of land as tenants in common, and to the other two parcels, of 127.57 acres, as joint tenants with rights of survivorship.

In November of 2010, with [Janet Moore] hospitalized due to a stroke, Mrs. Ralston stayed for five days at the home of William E. Ralston, where she broke her hip. She returned to the Moore residence on June 1, 2011, after spending six months in the hospital and then a nursing home while Janet recuperated, and died there on February 18, 2012. Janet Moore, named as Executrix in the decedent's will, was granted letters testamentary.

Three years before her death, Mrs. Ralston had been diagnosed with impairment of memory (adequately compensated), visual and gait problems, and Parkinson's disease (adequately compensated). Her condition further deteriorated after leaving the nursing home, and from at least October 2011, she suffered from dementia and hallucinations.

Trial Court Opinion, 5/11/2015, at 1-2.

On May 30, 2013, Appellants filed a civil complaint against their sibling, Janet Moore, individually and as executrix of Mrs. Ralston's estate, averring that Janet Moore used her confidential relationship to exert undue

influence over Mrs. Ralston to execute the two reformed deeds.[1] The complaint sought to rescind or reform the two executed deeds, declaratory relief as to the invalidity of deeds, and damages for lost rents and profits. On March 16, 2015, Appellants filed a partial motion for summary judgment. The trial court heard argument on the motion on April 27, 2015. In an opinion and order entered on May 11, 2015, the trial court denied Appellants relief.

On March 16, 2016, Randy Moore filed a motion to substitute himself as a successor for Janet Moore, his wife, who died on September 17, 2015.[2] The trial court granted the successor motion by order entered on March 16, 2016. On April 8, 2016, the trial court granted Randy Moore's motion to amend the caption accordingly. On May 2, 2016, Randy Moore filed a motion for summary judgment. Appellants responded to the motion for summary judgment on June 6, 2016. In an opinion and order entered on August 1, 2016, the trial court granted Randy Moore's motion for summary judgment. This timely appeal resulted.[3]

_____

[1] There is no challenge to the will executed on September 9, 2009.

[2] Randy Moore was named executor of Janet Moore's estate on October 6, 2015.

[3] Appellants filed a notice of appeal on August 29, 2016. On August 30, 2016, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants complied on September 19, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 28, 2016, relying largely upon its earlier
*(Footnote Continued Next Page)*

On appeal, Appellants present the following issues for our review:

I. The trial court having held, in ruling on [Appellants'] motion for partial summary judgment, that the record contained genuine issues of fact as to the "confidential relationship" and the "undue influence" issues, whether the trial court erred, in ruling on [Randy Moore's] motion for summary judgment, by changing its mind and ruling that there were no factual issues and that [Randy Moore] was entitled to summary judgment as a matter of law.

II. Whether the trial court failed to view the record in the light most favorable to [Appellants], the non-moving parties, as to the motion for summary judgment as a matter of law.

III. Whether the record shows a sufficient confidential relationship between Janet Moore and her mother, Arlene Ralston, to shift the burden of proof as to donative intent to Janet Moore's estate.

Appellants' Brief at 4-5 (complete capitalization omitted).

Appellants' three issues are interrelated, so we will examine them together. First, Appellants argue that the trial court erred by concluding there were factual issues to resolve when it ruled on their partial motion for summary judgment, but then "inexplicably" later granted Randy Moore's motion for summary judgment based upon the same facts.[4]  *Id.* at 9.

_(Footnote Continued)_ ————————————

opinions entered on May 11, 2015 (denying Appellants' motion for partial summary judgment) and August 1, 2016 (granting Randy Moore's motion for summary judgment).

[4] We outright reject Appellants' suggestion that the trial court's decision to grant Randy Moore's motion for summary judgment rested on the same facts of record as the trial court's ruling on Appellants' motion for partial
_(Footnote Continued Next Page)_

- 4 -

Appellants claim that the evidence presented showed a confidential relationship between Janet Moore and Mrs. Ralston, because: (1) Mrs. Ralston was of weakened intellect and dependent on Janet Moore; (2) Janet Moore received a substantial portion of Mrs. Ralston's property; and, (3) Janet Moore was given power of attorney and had the means to exert undue influence on Mrs. Ralston. *Id.* at 12-17. Appellants also claim that because there was sufficient evidence of a confidential relationship, the burden shifted to Randy Moore to show Mrs. Ralston's voluntary donative intent. *Id.* at 19-21. Appellants allege that the following facts "raise serious questions as to Mrs. Ralston's donative intent[:]" (1) "the scrivener of the two deeds in question was unable to state who had called his office to request the preparation of these joint tenancy deeds[; (2) c]onsidering Mrs. Ralston's advanced age, her dementia, her hallucinations, her memory loss and her inability to read, it is highly suspicious that she would have the

*(Footnote Continued)* _____

summary judgment. In support of his motion for summary judgment, Randy Moore submitted the depositions of Coyle Barton Jones, Esquire, Mrs. Ralston's attorney who prepared the deeds in question, and Attorney Jones' secretary, Diane Mowery, as well as the deposition testimony of Charles Ralston, Mrs. Ralston's grandson, and William R. Ralston, an appellant herein. *See* Motion for Summary Judgment, 5/2/2016, at Exhibits A-C; *see also* Copy of Deposition of Diane Mowery, 5/2/2016. Appellants do not address this additional evidence. The trial court also notes that these depositions "augment the previously filed depositions of daughter Pearl Reed, granddaughter Yvonne Ralston, and Janet Moore and her husband Randy Moore on the issue of mental capacity." Trial Court Opinion, 8/1/2015, at 3 n.5. Hence, Appellants suggestion that the trial court did not consider additional information following the denial of their motion for partial summary judgment is categorically false.

ability to understand a tenancy in common or a joint tenancy with right of survivorship[;]" (3) Janet Moore was present during the execution of the deeds; and, (4) "the record contains no evidence why Mrs. Ralston would favor one of her children […] when she had earlier stated many times that she wanted the farm divided equally among all seven children." *Id.* Appellants further aver that the trial court did not employ the proper standard of review for ruling on a motion for summary judgment when it determined there were no issues of material fact based on "the record and the reasonable inferences therefrom" instead of upon "clear and convincing evidence." *Id.* at 19.

Our standard of review is clear:

> [o]ur review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must view the record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*412 North Front Street Associates, LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 660 (Pa. Super. 2016) (citation omitted).

We have previously determined:

> A conveyance of real property by way of deed is presumptively valid and will not be set aside unless it is shown by clear and convincing evidence that the transfer was improperly induced by fraud or other misconduct on the

part of the transferee. Written instruments are not to be set aside except upon convincing testimony that their execution was tainted by either actual or constructive fraud, or that the person executing the instrument lacked sufficient mental capacity. The burden of proving that the transfer was the product of a lack of mental capacity, undue influence, fraud, or a confidential relation is on the person seeking to set aside the deed.

*Walsh v. Bucalo*, 620 A.2d 21, 22–23 (Pa. Super. 1993) (internal citations, quotations and original brackets omitted).

As further noted in *Walsh*, we recognized our Supreme Court has previously determined:

a confidential relationship exists when the circumstances make it certain that the parties do not deal on equal terms; where, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed. In both situations an unfair advantage is possible. Such a relation is created between two persons when it is established that one occupies a superior position over the other; intellectually, physically, governmentally, or morally, with the opportunity to use the superiority to the other's disadvantage. A confidential relationship is not limited to any particular association of parties, but exists wherever one occupies such a position of advisor or counselor as reasonable to inspire confidence that he will act in good faith for the other's interest. Where a confidential relationship exists, the law presumes the transaction voidable unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond reach of suspicion.

However[,] where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts; care must be used not to confound acts springing from natural love and affection with confidential relations, and,

- 7 -

while the line of demarcation may in some cases be narrow, nevertheless, to sustain the integrity of gifts based on such affection in family relations, it is necessary the distinction should exist.

[Moreover,] the fact that [a] relationship [is] one of parent and child [does] not, in and by itself, create a confidential relationship. The existence of a close family relationship *per se* does not justify recognition of a confidential relationship. Instead, it is necessary to show that as a result of a relationship between two parties, one depended upon the other, who was able to exercise an overmastering influence over the other.

*Id.* at 23–24 (internal citations, quotations, and original brackets omitted).

Here, upon review of all the aforementioned depositions, the trial court found there was no clear and convincing evidence that Mrs. Ralston and Janet Moore were in a confidential relationship. Trial Court Opinion, 5/11/2015, at 6. The trial court examined the familial relationship and Mrs. Ralston's age and infirmities, as well as Janet Moore's role as primary caregiver and their year-long cohabitation and determined there was no "overpowering influence in securing the execution of the two deeds" at issue. *Id.* The trial court further recognized:

The only evidence of undue influence [Appellants] offer[ed was] (1) their mother's declaration years earlier that she wanted her children to share equally in her estate, (2) Randy and Janet Moore driving her to Attorney C. Barton Jones' office, where she executed the deeds in Janet's presence, and (3) Janet's failure to inform them of the conveyances. That Arlene Ralston had changed her testamentary intentions, however, [was] shown by her probated will executed eight months before the deeds, in which Janet was bequeathed roughly a double share of the residuary estate. The execution of the deed in the attorney's waiting room with Janet present [was] attributed to Mrs. Ralston's physical condition; and rather than

influencing her mother's decision, Janet replied, Mom, that's totally up to you," when asked by her mother, "is that what I want?" Janet made no effort to hide the deeds, as they were recorded in the public records at the time of execution, and notice of the title transfers would have been published in the local newspaper. Furthermore, the existence of Mrs. Ralston's general power of attorney tends to show that Janet did not exert undue influence over her mother in procuring the deeds, because the transfers could have [been] made without Arlene's participation by Janet as her agent.

\* \* \*

[Randy Moore] has since taken the depositions of Attorney Jones and his legal secretary, Diane Mowery[.] These [depositions] show clearly that Arlene Ralston acted of her own free will, and with the requisite knowledge and understanding to voluntarily execute the deeds. Thus, even if [the trial court found] a confidential relationship existed between Janet and her mother, [Randy Moore] [] met his burden of proving that the deeds were freely and voluntarily executed.

Mrs. Ralston's donative intent, moreover, [was] clear and free from all doubt. As Ms. Mowery testified, "Arlene wanted to make sure that Janet was taken care of because of the care that she had been giving her mother." Mowery Deposition at 19; *see also* Atty. Jones Deposition at 19-27 ("I think it was pretty clear that she wanted to favor Janet… I have seen many cases where an elderly person decides to [carve] out [a portion their estate to] the one who has been giving them [] care[.]"); Deposition of Randy Moore at 24-25; 2015 Memorandum at 7 (discussing other evidence of donative intent).[5]

_____

5  In its prior decision, the trial court stated:

Mrs. Ralston is shown to have been a strong willed woman whose dictates were respected by her family. She was distressed by the failure of most of her children to participate in her care, with only daughter Pearl Reed

*(Footnote Continued Next Page)*

Trial Court Opinion, 8/1/2016, at 2-4.

Here, in reviewing the evidence in the light most favorable to Appellants as our standard requires, we discern no abuse of discretion or error of law in granting Randy Moore's motion for summary judgment. The evidence shows that Janet Moore did not take a superior or overmastering position over Mrs. Ralston to Mrs. Ralston's disadvantage. While Mrs. Ralston, at one time, may have intended for all of her children to share equally in her estate, her intentions changed over time. When Janet Moore became Mrs. Ralston's primary caregiver, Mrs. Ralston changed her will to give Janet Moore a larger portion of her estate than she did her other six children. No one contested that decision. Nine months thereafter, Mrs. Ralston executed the deeds at issue. The evidence presented showed that Mrs. Ralston was able to understand the nature of the disposition of her real property and freely and voluntarily chose to favor Janet Moore for providing

_(Footnote Continued)_ ——————

> providing meaningful assistance to [Janet Moore], and only subsequent to their mother's return from the nursing home in 2011. As shown by her 2009 will, Mrs. Ralston had abandoned her initial intention to divide her property equally among her children. Apart from the deeds, [Janet and Randy Moore were] never compensated for providing [Mrs. Ralston] with room and board or health care services[.] Randy Moore believed that the deeds were in gratitude for his wife's services.

Trial Court Opinion, 5/11/2015, at 7 (footnotes omitted).

- 10 -

her care.[6] There was simply no evidence presented of undue influence and mere conjuncture will not suffice. Accordingly, we agree with the trial court that there was no confidential relationship between Janet Moore and Mrs. Ralston. Thus, Appellants failed to meet their burden of proving that the transfer was the product of a lack of mental capacity, undue influence, fraud, or a confidential relationship. As such, it was unnecessary to examine Mrs. Ralston's donative intent. Based upon all of the foregoing, we conclude that there were no genuine issues of fact and that the grant of summary judgment was proper.

Order affirmed.

Judgment Entered.

_____

[6] Prior to executing the deeds, Attorney Jones read them to Mrs. Ralston and testified that Mrs. Ralston "understood what she was doing and she wanted to do it." Randy Moore's Motion for Summary Judgment, Exhibit A, at 10. There was "no trepidation on her part or even urgency" and she was not bewildered, passive or inattentive. *Id.* at 10, 22. "[S]he showed a present understanding of her assets and she understood that these deeds were going to accomplish the transfer." *Id.* at 11. Mrs. Ralston "was adamant, insistent that this is what she wanted to do." *Id.* at 20. "Janet was saying nothing and Arlene was not asking Janet for any support." *Id.* Attorney Jones "did not see challenged mental faculties on that day." *Id.* at 23. He testified that, in conjunction with the will change in 2009, he saw Mrs. Ralston's deliberate progression of giving more assets to Janet. *Id.* at 23.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/17/2017